Hon. ASAHEL PECK,  
Hon. BENJAMIN H. STEELE, } Assistant Judges.  
Hon. HOYT H. WHEELER,

---

## STATE OF VERMONT *v.* AARON CLARK.

*Criminal Law. Burglary. Juror. Challenge. Evidence. Hotel. Night Time.*

In an indictment for burglariously entering with *intent* to steal, it is not necessary to allege whose property the respondent intended to steal.

Where a juror said, upon inquiry by counsel, as he was called, that he had expressed an opinion as to the guilt of the respondent, on reading a newspaper account of the examination before the magistrate, a few weeks before, but that he has no opinion, and has formed none, and can try the case impartially on the evidence, he was *held* disqualified.

As an introductory question, it was *held* proper for the prosecuting attorney to ask the person whose room was broken into on the occasion of the alleged burglary, he being a witness for the state, whether he lost any thing on that occasion or night.

The room that was entered was locked by the occupant when he went to bed on the night of the burglary, and the key showed the marks of forceps, and the respondent was found in the room. In the morning, soon after his arrest, a pair of forceps were found in a wood-box on the same floor with the respondent's room and the room he entered, but no one saw him have them or put them in the box. *Held* that in the refusal of the court to exclude this evidence from the jury, on the ground that the respondent was not connected with the forceps, there was no error.

If a person, being lawfully a guest in a hotel, leaves his own room and breaks into the room of another guest where he has no right to enter, for the purpose of committing a felony, it is burglary the same as if he had broken in from the outside.

The respondent was discovered in the other guest's room at half-past three in the morning of August third, and the landlord testified that "it was then dark, daylight was approaching, but that he could not see to distinguish a man's face in the hall where he was, without a light." The court charged the jury that if they believed the testimony of the landlord on this point, then the offense was committed in the night time within the meaning of the statute. *Held,* that in this there was no error.

INDICTMENT for burglary alleged to have been committed by Aaron Clark, the respondent, upon the premises known as the Central House, a hotel in the village of Rutland, owned and kept by John W. Cramton and John A. Salisbury, the family of said Salisbury living within said hotel.

The indictment contained three counts, the second of which alleged :

" That Aaron Clark, of Albany, in the state of New York, heretofore, to wit, on the third day of August, in the year of our Lord one thousand eight hundred and sixty-eight, about the hour of twelve o'clock in the night time of the same day, with force and arms, at Rutland, in the county of Rutland, and state of Vermont aforesaid, the dwelling-house of John A. Salisbury and John W. Cramton there situate, feloniously and burglariously did break and enter with intent the goods and chattels in the said dwelling-house, then and there being, feloniously and burglariously to steal, take and carry away, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state."

After the jury was called, one of the jurors, in reply to questions put to him by the counsel for the respondent, said he had expressed an opinion as to the guilt of the respondent on reading a newspaper account of his examination before the magistrate, which was published a month or six weeks before, but that he had no opinion and had formed none, and can try the case impartially on the evidence. The counsel for the respondent then challenged said juror for cause, on the ground that he had expressed an opinion on reading said newspaper account, as stated by him. But the court decided that the ground of challenge was insufficient, and that said juror was indifferent, to which decision the respondent excepted.

The prosecution proved that the respondent came to said hotel on Friday or Saturday, 1st day of August, 1868, and called for a room at said hotel, which he occupied as a guest until arrested on Monday morning following ; that on Sunday evening he requested the landlord to call him at four o'clock on Monday morning to leave on an early train ; that on Monday morning at half-past three o'clock, one Marshall Burton, who was also staying at the same hotel as a guest, having come there the next day after the respondent, and occupied a room a short distance from the room of the respondent, and upon the same floor, waked up and found the respondent standing in his room near the foot of his bed ; that Burton spoke to him several times asking what he wanted, but receiving no reply, jumped out of bed and went into the hall, and there made an outcry, and the landlord, John A. Salisbury, came to his assistance ; and while talking with Salisbury, the respondent ran out of his, Burton's, room, and ran up the stairs leading into the third story of the hotel ; that the respondent soon came running down the stairs, was pursued by Salisbury, and was caught on the same floor with his and Burton's rooms, which was in the *second* story of the hotel.

One Winn, a witness for the prosecution, testified that about four o'clock, on said morning, and soon after the arrest of the said respondent, he and another man by the name of Chamberlain, while making search through the hall, found a pair of forceps, such as are used by burglars in turning keys to locks, in a wood-box in the hall, between the room of the respondent and the room of Burton, on said *second* floor, lying in the bottom of the box under bits of wood and scraps of paper. It appeared that the respondent ran past said box when pursued by Salisbury as aforesaid, Salisbury being near the box at the time the respondent passed it, but neither Burton nor Salisbury saw the respondent throw said forceps into said wood-box, or have them at any time ; the gas was lighted in the hall before said pursuit began. Burton swore that he locked the outside door of his room when he went to bed and left the key in the lock on the inside, and that his door was open when he jumped out of bed as aforesaid. There was also some evidence tending to prove that the key to Burton's room,

after Clark was arrested as aforesaid, presented the appearance of having been operated upon with the forceps ; the marks on the key corresponding with marks made by the forceps.

While Burton, a witness for the prosecution, was upon the stand, the prosecuting attorney put to him the following question : " Did you lose any thing on that occasion or night ? " This was objected to by the respondent, but the objection was overruled ; exceptions by the respondent. Burton replied that he lost $20.

There was no evidence to show that the respondent broke into Burton's room, other than the fact that he was found in there under the circumstances before stated.

Salisbury, a witness for the prosecution, stated that when Clark ran out of Burton's room it was half-past three o'clock and it was dark, daylight was approaching, but that he could not see to distinguish a man's face in the hall where he was without a light, and that none of his guests were up. This is all the evidence there was in the case as to whether the alleged offense was committed in the night time or not, except that said Winn stated it was not very light out of doors.

" After the case was closed the counsel for the respondent requested the court to exclude from the consideration of the jury all the evidence as to the forceps, for the reason that there was no evidence connecting them with the respondent, or showing that he ever had them in his possession, which request the court refused.

The respondent's counsel also requested the court to charge the jury that if they found that the respondent was lawfully within the house as a guest, as the evidence tended to prove, his going from his own room and breaking into the room of Burton with the intent to commit larceny therein in the night time, does not constitute the crime of burglary, charged in the indictment, and the respondent should be acquitted, which request the court refused and charged the jury upon this point as follows : ' If you find from the evidence that the respondent put up at the house with the design of doing what is charged, that is of thus breaking and entering the room of a guest of the house by forcing the door as claimed and with the intent of stealing ; or if after taking lodgings at the house, he did in the night time thus open the door of Burton with the intent of stealing, and actually entered his room to accomplish that purpose, then there was such a breaking of the house as the statute contemplates, and the respondent is guilty, but the jury

must be satisfied of the breaking and entering of the room of Burton, with the intent charged, by the respondent, beyond a reasonable doubt.'

The counsel for the respondent also requested the court to charge the jury that the burden of proof was upon the prosecution to show that the alleged offense was committed in the night time, and unless they found beyond a reasonable doubt that the countenance of a person could not be reasonably discerned out of doors by the light of the sun at the time the alleged offense was committed, although it might be dark in the hall of the hotel, the breaking and entering as proved in this case was not burglary, and the respondent should be acquitted, which request the court refused, and charged the jury that if they believed the testimony of Salisbury, upon this point, then the offense was committed in the night time within the meaning of the statute."

The jury returned a verdict of guilty upon the second count of the indictment, but not guilty as to the other counts.

The respondent then filed a motion in arrest of judgment upon the ground that the said second count did not allege whose property or goods and chattels the respondent intended to steal. The court overruled the same *pro forma*.

To the admission of the evidence objected to, to the refusal to exclude the evidence as to the forceps as requested, to the refusal to charge as requested, to the charge as given, and to overruling the motion in arrest of judgment, the respondent excepted.

*Dunton & Veazey*, for the respondent.

*H. G. Wood*, state's attorney, for the state.

Decided at the January term, 1869. The opinion of the court was delivered by

PIERPOINT, C. J. We think the motion in arrest was properly overruled ; in fact the objection to the indictment raised by the motion is not now seriously insisted upon. The principle seems to be well settled by authority, that in an indictment for burglariously entering, *with intent* to steal, it is not necessary to allege whose property the respondent intended to steal.

75

The first exception taken upon the trial was to the decision of the court allowing one Manley to sit as a juror in the trial of the respondent, against his objection. It appears that, upon being enquired of, the juror said that he had expressed an opinion as to the guilt of the respondent, on reading a newspaper account of the examination of the respondent before the magistrate, some month or six weeks before ; but that he has no opinion, and has formed none, and can try the case impartially on the evidence.

This question was before this court in the case of *Boardman et al.* v. *Wood et al.*, 3 Vt., 270. That was a civil action, and the question arose upon the answer of a juror that he had formed an opinion, but did not know that he had expressed it. The court decided that to have formed an opinion did not disqualify a juror, but to render him incompetent he must have expressed that opinion.

Judge WILLIAMS, in delivering the opinion of the court, carefully reviews the authorities bearing upon the question, and shows very clearly and satisfactorily, that the rule, both in England and in this country, is that a juror who has formed and expressed an opinion is disqualified, and that one who has formed an opinion without expressing it is not. So far as my experience and observation extends, this rule has been recognized and practiced upon, both by the courts and the bar, ever since, in this state ; and the practice, I think, has been the same both in civil and criminal cases. There certainly can be no good reason for relaxing the rule against the respondent in a criminal prosecution. In this case the juror says he expressed an opinion. That necessarily involves the forming of one, as he could not otherwise express it. Having formed and expressed an opinion he is thereby disqualified, unless what he further says shall have the effect to take the case out of the rule. It is not quite clear what the juror meant when he said that, at the time of trial, he had no opinion, and had formed none, after having just stated that a few weeks before he had expressed one. Probably these expressions should be taken in connection with the following one : that he could try the case impartially, and that what he meant was, that he had no opinion, and had formed none, that would prevent his trying the case impartially, and undoubtedly he thought so. Men are very apt to

think they can try cases fairly, even though they have a strong feeling in favor of one side or the other; but whether a man, who has expressed an opinion on the subject to be considered, can try the question fairly or not, does not depend upon his own opinion of his impartiality. The rule of law is that he cannot, or at least that the parties shall not, be required to take the risk.

We think the respondent had the right to have the juror discharged.

The question put to Burton we think was a proper one. The question was evidently an introductory one. If the witness answered in the affirmative, the question would then be what he had lost, and under what circumstances, and what connection the respondent had with the loss; and all other matters connected therewith tending to show the intent with which the respondent made the entry. It might be difficult to embrace all you expect a witness to testify to in one question, and still more difficult for the witness to answer such an one understandingly, when put. We think the court was right in refusing to withdraw from the jury the evidence as to the forceps. It appeared that Burton's door was locked when he went to bed; when he awoke the door was unlocked, and the respondent in his room. There was evidence tending to show that the forceps found in the wood-box had been used upon the key in the lock on Burton's door; and although Salisbury and Burton did not see him throw them into the box as he passed, still he might have hidden them in the wood-box after he had turned the key in the lock, and before he entered the room, so that, if he was caught, the instrument by which he effected the entrance would not be found upon him.

It is insisted that the court erred in refusing to charge the jury that if they found that the respondent was lawfully within the house as a guest, his going from his own room and breaking into Burton's room, etc., would not constitute the crime of burglary. The respondent was in a hotel, a place into which all travelers have a right to enter, certain parts of which are ordinarily appropriated to the use of all the guests in common; other parts are appropriated to the exclusive use of the landlord, or are assigned to the exclusive use of particular guests, and to these parts no

other person has the right of entry solely upon the ground that they are guests. If a person, so being a guest in a hotel, breaks into other parts of the house where he has no right to enter, for the purpose of committing a felony, it is burglary, the same as if he had broken in from the outside. Wharton lays down the rule thus : " A burglary may be committed by a breaking on the inside, for if a thief enter the dwelling-house in the night time through an outer door being left open, or by an open window, yet if, when within the house, he turn a key, or unlatch a chamber door, with intent to commit a felony, this is burglary." So " when a servant, who sleeps in an adjacent room, unlatches his master's door, and enters his apartment with intent to kill him, or to commit a rape on his mistress, it is burglary." And he cites numerous authorities in support of these propositions. He says further, that " whether a guest at an inn is guilty of burglary by rising in the night, opening his own door, and stealing goods from other rooms, has been doubted." The doubt in this latter case, I apprehend, arose from the fact that the only breaking consisted in the guest opening his own door, which he had a right to do for a lawful purpose. Thus it appears that a man may commit burglary by breaking into one part of a house to commit a felony, even though he is lawfully in another part of it, and that is precisely the case before us.

The charge of the court in respect to the time, whether night or day, was rather indefinite, and it is somewhat difficult to determine at what precise period, on any particular day in the year, the night ends and the day commences. At what time the respondent entered Burton's room does not appear, but after he had been discovered, and the landlord aroused, the testimony agrees that it was half-past three. This, on the 3d of August, must have been nearly an hour and a half before sunrise. As all know, the period between the first dawn and sunrise, at that season, is much shorter than it is in the winter season. Taking these facts in connection with the testimony of Salisbury as to how dark it was at the time when he was aroused, we think the court were justified in telling the jury that if they found these facts as testified to, they would find that the offense was burglary.

Some other points were made by the counsel for the respondent, that we think do not arise on the exceptions.

Exceptions sustained, and a new trial granted.