## ULLMAN *v.* THE STATE.

1. THEFT—INHABITANT.—Boarders in a boarding-house are not "inhabitants" within the meaning of Article 739 of the Penal Code. Pasc. Dig., Art. 2372. Wherefore, if one boarder in such a house commits a theft of property from a fellow-boarder's room in the same house, his offense is not mitigated, by the provisions of that Article, from theft from a house to simple theft.

2. SAME.—The Penal Code deals more leniently with domestic servants and other inhabitants of a house than with other persons, on account of the recognized right of such inhabitants to enter any part of the house at all times; but a boarder in the house has no such unlimited right of entry, and is not more favored in this respect than a stranger.

3. SAME.—See the opinion of the court in this case for distinctions affecting the construction of the provisions of the Penal Code above referred to.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. NOONAN.

*E. Altgelt*, for the appellant.

*H. H. Boone*, Attorney General, for the State.

ECTOR, Presiding Judge. One of the grounds the appellant relies on for a reversal of the judgment is the refusal of the court below to give the jury the following special instructions, asked by the defendant's attorneys, viz. :

" If you believe from the evidence that the defendant was a guest at the boarding-house of Mrs. Schoomaker at the time of the stealing of the pistol, you will find him not guilty of theft from the house as charged, but you may find

him guilty of theft of a pistol, if the evidence should warrant such finding, and then affix the punishment at confinement in the county jail for a term not exceeding one year, and you may add a fine not to exceed one hundred dollars."

Our statute prescribes that, "If any person shall steal property from a house in such a manner as that the offense does not come within the definition of burglary, he shall be punished by confinement in the penitentiary not less than, two nor more than seven years." Art. 2408, Pasc. Dig.

The jury found the defendant guilty, and assessed his punishment at two years' confinement in the penitentiary. We find no error in the charge of the court.

"An entry into a house for the purpose of committing theft, unless the same is effected by the actual breaking, is not burglary when the same is done by a domestic servant or other inhabitant of such house; and a theft committed by such person after entering a house is only punishable as simple theft." Art. 2372, Pasc. Dig.

Now, if appellant was a domestic servant or other inhabitant of the house from which the theft was committed, his offense would be simple theft, as the proof shows the pistol stolen was of value less than $20 dollars. In *Wakefield* v. *The State*, 41 Texas, 558, the court say: "Domestics, as defined by Bouvier in his Law Dictionary, are those who reside in the house with the master they serve;" the term does not extend to workmen and laborers employed out of doors. By Webster, "a domestic is a servant or hired laborer residing with a family;" and he defines an inhabitant to be one who has a fixed residence, as distinguished from an occasional lodger or visitor. The Code combines these terms, and the Article quoted speaks of "a domestic servant or other inhabitant of such a house." These terms do not extend to a servant whose employment is out of doors and not in the house, or to a lodger or visitor, as distinguished from an inhabitant; and they do not,

therefore, come within the classification of a domestic servant or an inhabitant of the house.

Burrill, in his Law Dictionary, vol. 2, p. 72, defines *inhabitant* as follows: "A dweller in a place; a resident; one who dwells or resides permanently in a place; one who has a fixed and permanent abode in a place. A resident and inhabitant mean the same thing; but citizen and inhabitant are not synonymous. The Latin *habitara*, the root of this word, imparts by its very construction frequency, constancy, permanency, closeness of connection, attachment, both physical and moral; and the word ' in' serves to give additional force to these senses."

The same author defines *lodger* as follows: "One who occupies hired apartments in another's house; a tenant of part of another's house." Vol. 2, p. 166.

"Boarder" the same author defines as follows: "One who has food and lodging in another's house or family for a stipulated price." Vol. 1, p. 211.

Where there are separate families in a house, each part is regarded as the mansion-house of the family occupying it, and the same rule applies where the entire building is let to lodgers. The separate door leading to each tenement is to be deemed the outer door of the occupant's dwelling-house. But if the owner lets to lodgers some of his rooms, retaining for inhabitation the residue, the whole is considered in law as the dwelling-house of the owner. Still, in burglary, the separate room of a guest at a hotel has been deemed to be his dwelling-house. It is not so with the room of an ordinary lodger in a private house, especially when no particular room has been assigned to him. Bishop on Stat. Crimes, 289.

The evidence in the record shows that the pistol of Ed Hartsmann was stolen in Bexar county, from his private room in the boarding-house of Mrs. Schoomaker, in the city of San Antonio. Hartsmann saw his pistol on the 28th or

29th of June, 1875. It was stolen from a closet in his room in said boarding-house. He missed it the 1st of July, 1875. The defendant had been boarding in the hotel, but left it on the 1st day of July. That Hartsmann found his pistol in B. Schwartz's pawn shop on the 2d day of July, 1875. That defendant had no right to enter his, Hartsmann's, room. Schwartz testified that the defendant pawned the pistol with him the 1st day of July, 1875. The evidence does not show whether the pistol was taken in the night or during the day, and there is nothing to show in what manner the entrance into the room was made.

In the case of *The State* v. *Clark*, Burton and Clark were guests at a hotel at Rutland, in the state of Vermont. The door to Burton's room was unlocked during the night, and the room entered by Clark. Burton awoke, gave the alarm, and Clark was seen to run out of Burton's room. Clark was indicted for burglary.

The court say: " It is insisted that the court erred in refusing to charge the jury that, if they found that the respondent was lawfully within the house as a guest, his going from his own room and breaking into Burton's room, etc., would not constitute the crime of burglary. The respondent was in a hotel—a place into which all travelers have a right to enter—certain parts of which are ordinarily appropriated to the use of all the guests in common; other parts are devoted to the exclusive use of the landlord, or are assigned to the exclusive use of particular guests, and to these parts no other person has the right of entry solely upon the ground that they are guests.

"If a person, so being a guest in a hotel, breaks into other parts of the house where he has no right to enter, for the purpose of committing a felony, it is burglary, the same as if he had broken in from the outside." 42 Vt. 635, 636. We have examined with care the able brief of the attorney general, and believe it is conclusive on this point.

While our statute intended to deal more leniently with " domestic servants and other inhabitants " of a house, when guilty of a theft from the house occupied by them, than with other persons, because of their generally recognized right freely to enter any part of the house at all times, the boarder has no such recognized and unlimited right of entry. He has the right to enter his own particular room at any time, day or night, but no such right of entry to the private room of a fellow-boarder. Except to the occupant and the domestic servants or inhabitants of the house whose duties may require them to enter it, the private room of a boarder is, or should be, as sacred and as much protected by law from the intrusive entry of a fellow-boarder as from a stranger, or as would be his private residence.

We do not consider it is necessary to discuss the other assignment of errors made by the counsel of the appellant. We believe the court below was correct in overruling the appellant's motions for new trial and in arrest of judgment.

The judgment is affirmed.

*Affirmed.*