STATE *v.* EDWIN C. HAYDEN; AND EDWIN C. HAYDEN *v.* STATE.

*Evidence. Opinion. Expert Testimony. Disqualification of Juror.*

On trial on indictment for murder, the defence was that the respondent was subject to insanity when intoxicated or greatly excited, and that he was insane when he committed the act wherewith he was charged. The State introduced non-expert witnesses, who testified that they knew the respondent, and had seen him frequently on different occasions and under various circumstances—on occasions when he was excited, when he was intoxicated, and when he was sober. They were then permitted to testify to their opinions as to whether the respondent was insane on any of those occasions. *Held,* no error.

A medical expert who heard all the evidence relating to the conduct that was claimed to indicate insanity, was allowed to give his opinion as to the respondent's sanity in answer to the question, " Supposing all these facts you have heard testified to . . . are true, what is your opinion," &c. *Held,* that the question need not embrace a statement of the facts developed in evidence, and that there was no error.

A medical expert testified that he had heard all or nearly all the evidence relating to the question of sanity, but not all the evidence in the case. There was certain testimony that the respondent claimed to rely on as bearing on that question that he did not hear, but whether any of that testimony would have tended to prove insanity did not appear. He was asked whether, assuming what he had heard to be true, the respondent was, in his opinion, sane or insane, and the question was permitted to be answered. *Held,* that it was no objection to the witness' testifying to his opinion that he had not heard all the evidence.

To show insanity, the respondent introduced evidence tending to prove that he was sick and greatly prostrated and acted strangely while in jail. The State, in rebuttal, asked the physician who attended him at that time whether he thought his condition was feigned. It was objected that the witness was not present when the

respondent was taken sick, but the witness said the respondent detailed to him his feelings and symptoms, whereupon he was permitted to testify. *Held*, no error.

On hearing of petition for a new trial for that one of the jurors had formed and expressed an opinion previous to the trial that the petitioner was guilty, and ought to be summarily hung, which was unknown to the petitioner at the time the jury was impanneled, affidavits were read tending to show that on two different occasions soon after the alleged murder, the juror, on being told of the reports in regard to the murder and hearing opinions adverse to the petitioner, said that the petitioner ought to be hung without judge or jury. The affidavit of the juror, which was also read, was, in effect, that at the time the jury was impanneled he was unaware of any prejudice against the petitioner, that he did not then know that he had ever formed or expressed an opinion as to his guilt, and that he was confident that he never had. It did not appear that the question of the petitioner's sanity was alluded to on either of those occasions. *Held*, that the opinion, to be such as by its formation and expression to disqualify the juror, should be unqualified, and based on something more substantial than mere rumor, and that the evidence did not show the formation and expression of such an opinion.

INDICTMENT for the murder of Gertrude Hayden, on August 31, 1876. Plea, not guilty, and trial by jury, September Term, 1877, Orleans County, POWERS, J., presiding. The exceptions taken on the trial, and a petition for a new trial, were heard together at this term.

The evidence on the part of the State tended to prove that the deed was done under the following circumstances. On the afternoon of the day before the murder, the respondent, who had been living at St. Leon Springs, P. Q., apart from his wife, the murdered woman, who had been obliged to leave him by his reckless and intemperate course of life, came to the Derby Line Hotel, in Derby Line, where she was then staying with her sister and sister's husband, Mr. and Mrs. Brigham, and had conversation with her and her sister in regard to his again living with her. He was then somewhat intoxicated, and she gave him no encouragement. He spent the night at the hotel in Stanstead, near Derby Line, drinking excessively. In the morning, having told several persons that he intended to shoot his wife, and having inquired whether under the extradition treaty he would be given up to the authorities of Vermont if he escaped into Canada, he again went to Derby Line and sought admission to Brigham's rooms, but was intercepted by Mr. Brigham, who tried to persuade him to go away and not to return until he had become sober. He went away, but borrowed a revolver, and, at about 11 o'clock, returned

to the hotel, and started to go to Brigham's room, but was again met by Brigham. The respondent again expressed a wish to see his wife alone, and Brigham again objected on the ground that he was in an unfit condition. The respondent then turned as if to go down stairs, but when he had gone a few feet he drew the revolver and fired at Brigham, wounding him in his side. Brigham staggered through a door to a verandah near by, when the respondent forced the door of Brigham's room and shot his wife. Brigham and others then came in and disarmed the respondent, and arrested him. After he was arrested he said that his purpose was to kill his wife, that he hoped she would die, and that he was ready to be hung.

No attempt was made on the part of the respondent to controvert the evidence introduced on the part of the State relating to the fact and circumstances of the killing, the defence proceeding wholly upon the ground of the alleged insanity of the respondent at the time of the commission of the act in question. It was claimed that the respondent's insanity was of the kind that would manifest itself on occasions when the respondent was under great mental excitement, or under the influence of intoxicating liquor,— the kind known as "emotional insanity." In support of that claim evidence was introduced on the part of the defence tending to show that certain of the respondent's ancestors and kindred had been eccentric or insane, and evidence concerning the respondent's conduct on the night before the murder, while on the way to jail at Irasburg, while in jail, and afterwards while confined in the state prison, which tended to show, among other things, that he was sick and greatly prostrated while in jail, and that his conduct was then strange and unaccountable, and the respondent relied also on all of the evidence introduced on the part of the State relative to the shooting and to the respondent's conduct before and after.

The State introduced no evidence to controvert that of the defence as to the fact of acts and declarations of the respondent that were claimed to indicate insanity, but introduced as witnesses George C. Wood, H. A. Channel, and Hosea B. Hanson, who testified that they knew the respondent and had seen him frequently

on different occasions and under various circumstances—had seen him excited and had seen him intoxicated. They were thereupon asked to state their opinion as to whether the respondent was sane or otherwise on any of those occasions, to which the respondent objected; but the question was allowed to be answered, to which the respondent excepted.

Dr. Draper, superintendent of the asylum for the insane at Brattleboro, was also called by the State, and after testifying that he had been present in court and heard all the evidence as to the respondent's conduct that was claimed to indicate insanity, he was asked the following question :

Q. Supposing all these facts that you heard testified to in the case by defendant's witnesses and witnesses for the prosecution, are true, what is your opinion, do you think he was sane or insane at the time of the alleged murder?

That question was objected to by the respondent, for that the facts should have been detailed in the question; but the court ruled that as the witness had heard the evidence, and as there was no question as to the facts relied on in proof of insanity, the question needed not to be so framed; to which the respondent excepted.

The State called also Dr. H. S. Brown, who saw the respondent when he was sick in jail, and asked him whether or not he thought the respondent's condition was feigned. The question was objected to for that the witness was not present when the respondent was taken sick; but on inquiry by the court the witness said that the respondent detailed to him his feelings and symptoms, and thereupon the court ruled that the question might be answered ; to which the respondent excepted.

Dr. Brown was also offered as an expert, and on inquiry testified that he had heard all or nearly all of the respondent's testimony bearing upon the question of sanity, but not all the testimony in the case, and that he did not hear a part of the testimony of Mr. and Mrs. Brigham, who had testified in regard to the circumstances of the killing. He was then asked whether, assuming what he had heard to be true, the respondent was, in his opinion,

sane or insane at the time he committed the act in question. The question was objected to for that the witness had not heard all the testimony, but it was permitted to be answered, to which the respondent excepted.

The petition for a new trial alleged that William Chamberlain, one of the jurors who tried the case, had formed and expressed an opinion on the merits of the case before the case was tried, an opinion to the effect that the petitioner was guilty of the crime with which he was charged, and ought to be hung in the most summary manner; and that the petitioner had no knowledge thereof until after the conclusion of the trial. In proof of the allegations of the petition the petitioner relied on the affidavits of Wyram L. Russell and Solomon W. Eaton, who testified that they had a conversation with Chamberlain in Russell's store very soon after the alleged murder, in which Chamberlain, as Russell testified, expressed an opinion unfavorable to the petitioner, or said, as Eaton testified, that " such a man as that ought to be strung right up without judge or jury." The petitioner relied also on the affidavits of George M. Clark and Henry E. Jackman, who testified that they had a conversation with Chamberlain in Jackman's shop soon after the alleged murder and before the trial, in which Chamberlain said that the petitioner " ought to have been strung up or hung without judge or jury before ever he left Derby Line." Those affidavits were taken October 5, 1877. The affidavits of those affiants were taken on the other side also, and from them it appeared that before Chamberlain expressed any opinion, the affiants related what they had learned of the matter through the press and otherwise, and expressed opinions adverse to the petitioner. It did not appear from any of the affidavits that anything was said by any one about the subject-matter of what turned out to be the petitioner's defence. The affidavit of Chamberlain was also taken, and he testified that at the time the jury was impanneled he was unaware of any prejudice against the petitioner, that he did not then know that he had ever formed or expressed any opinion as to his guilt, that he had no recollection of having said any such thing before the trial as that the petitioner ought to have

been strung up without judge or jury before he left Derby Line, and that he was very confident that he never did say any such thing nor have any such feeling.

*Henry Ballard, W. W. Grout,* and *H. C. Wilson,* for the respondent.

The questions put to Dr. Draper and Dr. Brown were inadmissible. The rule is that an expert on a question of insanity cannot give his opinion on the whole case, nor on the general merits of any question involved in it, nor on any specific facts in the case as such, but only on certain facts assumed to exist, or stated hypothetically, which may or may not exist in the finding of the jury. The question put in effect transferred the witnesses from the stand to the jury box. The rule requires that the expert opinion be kept separate and distinct from any opinion that the witness may have as to the facts on which he is to express an opinion. *Fairchild* v. *Bascomb,* 35 Vt. 398; *Commonwealth* v. *Rogers,* 7 Met. 500; s. c. 1 Lead. Crim. Cas. 87, and note; *People* v. *Lake,* 12 N. Y. 358; *United States* v. *McGlue,* 1 Curt. C. C. 1; *Spear* v. *Richardson,* 37 N. H. 24; *Dickinson* v. *Barber,* 9 Mass. 228; *Woodbury* v. *Obear,* 7 Gray, 467; *Hunt* v. *Lowell Gas Co.* 8 Allen, 169.

It was erroneous to permit Dr. Brown to express an opinion on a part only of the evidence relied on in proof of insanity. *Lake* v. *People,* 1 Parker C. C. 495; s. c. 12 N. Y. 358.

Dr. Brown's testimony in regard to his impression of the respondent's sickness in jail should have been excluded. It was based not only on what he saw, but on what the respondent told him. Besides, it was wholly irrelevant.

The testimony of the witnesses Wood, Channel, and Hanson as to matters of opinion should have been excluded. The rule as to non-expert witnesses to a question of sanity is, that they must first state the specific facts on which they base their opinions—must testify to the acts and sayings of the respondent, that the jury may know the grounds of those opinions. *O'Brien* v. *Rolfe,* 36 N. Y. 282; *Clapp* v. *Fullerton,* 34 N. Y. 190; *Dunham's Appeal,* 27

State v. Hayden.

Conn. 199 ; *Lester* v. *Pittsford*, 7 Vt. 158 ; *Hathaway* v. *National Life Insurance Co.* 48 Vt. 335.

The juror Chamberlain was disqualified. The respondent had no knowledge of it at the time, so there was no waiver of any right. A new trial should be granted. *Deming* v. *Hurlbut*, 2 D. Chip. 45 ; *French* v. *Smith*, 4 Vt. 363 ; *State* v. *Godfrey*, Brayt. 170 ; *State* v. *Clarke*, 42 Vt. 629.

*W. R. Rowell*, State's Attorney, and *H. S. Royce*, for the State.

The testimony of Wood, Channel and Hanson was properly admitted. A non-expert witness may testify to an opinion as to sanity in connection with facts on which the opinion is founded— an opinion derived from personal observation and conversation with the person whose sanity is in question. *Morse* v. *Crawford*, 17 Vt. 499 ; *Fairchild* v. *Bascomb*, 35 Vt. 398 ; *Cram* v. *Cram*, 33 Vt. 15 ; 1 Greenl. Ev. 440.

The opinion of Dr. Draper, predicated on all the evidence in the case, was properly admitted. *Fairchild* v. *Bascomb*, *supra* ; *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169 ; *Commonwealth* v. *Rogers*, 7 Met. 505 ; *Commonwealth* v. *Pomeroy*, 117 Mass. 143 ; *Gilman* v. *Strafford*, 50 Vt. 723 ; 1 Greenl. Ev. 440 ; 1 Am. Crim. Law, 47 and n. There was no such conflict in the evidence as to call for an opinion as to preponderance of evidence.

The testimony of Dr. Brown was also admissible, as he had heard all the testimony on the subject of insanity. *People* v. *Lake*, 12 N. Y. 358, is distinguishable.

A new trial will not be granted in a criminal case on account of the prejudice of a juror, when the juror denies the alleged facts, and states that he knew nothing of the case except by rumor, and that he was unprejudiced. *State* v. *Pike*, 20 N. H. 346 ; *People* v. *Frost*, 5 Parker C. C. 52.

There are certain opinions, impressions, and statements of jurors that would be good causes for challenge, but which would not lay the foundation for a new trial. Hilliard New Trials, 144 ; *Commonwealth* v. *Flanigan*, 7 Watts & S. 415 ; *State* v. *Spencer*, 1 Zab. 196 ; *State* v. *Fox*, 1 Dutcher, 566 ; *Simpson* v. *Pitman*, 13 Ohio, 365 ; *Poore* v. *Commonwealth*, 2 Va. Cas. 474.

The expression of a qualified opinion by a juror will not entitle the respondent to a new trial; the opinion must be a settled opinion on the facts.   Hilliard New Trials, 144; 3 Am. Crim. Law, s. 3152; *Commonwealth* v. *Flanigan, supra; Commonwealth* v. *Hughs,* 5 Rand. 655; *McCauseland* v. *Crawford,* 1 Yeates, 378; *Loefner* v. *State,* 10 Ohio St. 598.

It is not alleged nor does it appear that the juror was inquired of on his *voir dire* as to whether he had expressed an opinion in relation to the guilt of the respondent, and stated that he had not. Without such allegation, and clearly without such proof, the petition could not be sustained.   *Collier* v. *State,* 20 Ark. 36; *Myer* v. *State,* 19 Ark. 163; *State* v. *Shelledy,* 8 Iowa, 477; *State* v. *Funk,* 17 Iowa, 365; *Stewart* v. *Ewbank,* 3 Iowa, 191; *Jeffries* v. *Randall,* 14 Mass. 205.


The opinion of the court was delivered by

ROYCE, J.   The respondent was tried on an indictment charging him with the murder of his wife, Gertrude Hayden.   He did not controvert the evidence introduced by the State tending to show the killing and the circumstances shown in evidence connected with it, but claimed that at the time of the killing he was insane and not responsible for the act; and introduced evidence tending to show that he was so insane.   The State did not introduce any evidence upon the question of his insanity except the testimony of experts and others who gave their opinions upon facts detailed, and it is expressly stated in the exceptions that there was no dispute or conflict in the evidence as to the acts, conduct, and declarations of the respondent which were put in evidence as constituting the facts upon which his insanity was claimed to be established.

The first exception that is now insisted upon is to the ruling of the court in permitting the witnesses Wood, Channel, and Hanson to testify to their opinion upon the question of the respondent's sanity.   It appears that those witnesses were acquainted with the respondent, had seen him frequently and under different circumstances, and the opinions they were permitted to give in evidence were founded upon such acquaintance and knowledge.   In *Morse*

v. *Crawford,* 17 Vt. 499, it was held that a witness (not a professional man) who was acquainted with the defendant, and had conversed with him, might give his opinion in evidence upon the question of his sanity in connection with the facts upon which it was founded. And in *Cram* v.. *Cram,* 33 Vt. 15, it is said that upon a question of insanity witnesses not professional men are permitted to give their opinion in connection with the facts observed by them. And in *Hathaway* v. *National Life Insurance Co.* 48 Vt. 335, it is said that the opinions of persons not experts upon the question of insanity are admissible in this State based upon facts that are within their knowledge and observation, they being testified to with facts as the basis of their opinions. Upon the authority of those cases and others that might be cited, the evidence was admissible, and the weight to be given to it was a question for the jury, considering the facts testified to upon which the opinions given in evidence were based.

The second exception is as to the ruling of the court in permitting the question to be put to and answered by Dr. Draper (a medical expert) as the case shows that it was put and answered. There is no occasion here to discuss the ground and reasons upon which the testimony of medical experts upon questions of sanity is universally held to be admissible, as the only question upon this exception is, whether the rules of law have been observed in the way and manner of admitting the evidence. It appears that Dr. Draper was present in court and heard all the facts relating to the respondent's acts and conduct claimed to indicate insanity which had been put in evidence ; and it is important to notice in this connection that the case finds that there was no dispute or conflict in the evidence as to such acts and conduct. He was then asked : " Supposing all these facts you have heard testified to in this case by the defendant's witnesses and the plaintiff's witnesses are true, what is your opinion, do you think he was sane or insane at the time of the alleged murder ?" The question was objected to by the counsel for the respondent, and it was claimed that a question should be put to the witness including a statement of the facts developed in the case, and that he should not be given the entire scope of the case. The case of *Fairchild* v. *Bascomb*

is much relied upon by the counsel for the respondent, as an authority upon this question. That case, we think, is clearly distinguishable from this. In that, the evidence bearing upon the question of the sanity of the testatrix was conflicting; in this, as we have seen, there was no conflict. The question put to Dr. Rockwell in that case was substantially like the one put to Dr. Draper, but in answering the question he was required to find conclusions from the evidence in order to reconcile conflicting facts, and that was the exclusive duty of the jury. If there had not been any conflict in the evidence in that case, it is apparent that the judgment would not have been reversed, for Judge ALDIS says, " We have no doubt that a medical witness who has heard the testimony may give his opinion as to the sanity or insanity of a party as indicated by any given state of facts, so long as such facts are warranted by the evidence, and are not conflicting"; and that in some cases all the facts bearing upon the issue might be summed up in a single question. Here the question was put upon the assumption that all the facts put in evidence bearing upon the question of the respondent's sanity were true—they constituted the facts upon which he was to predicate and give his opinion. In answering the question he was not called upon to weigh or reconcile conflicting evidence. His opinion was based upon the assumed existence of the facts referred to in the question, and its value as evidence was dependent upon the actual existence of such facts. It is not denied but that hypothetical questions might have been put to Dr. Draper based upon any evidence in the case tending to show the sanity or insanity of the respondent; and upon the authority of *Gilman* v. *Strafford*, decided at the last term in Orange County, it would have been competent to have inquired of him what his opinion was, based upon the testimony of each witness (assuming that the testimony was true) who had testified to facts tending to show sanity or insanity. Hence there was no error in permitting the question to be put in the form in which it was, and with the right of the respondent upon cross-examination to get the opinion of the witness upon any phase of the evidence, and upon each and all of the facts tending to show his insanity.

39

No legal right pertaining to his defense could have been jeoparded by permitting it.

What has been said is applicable to the exception taken to the testimony of Dr. Brown, except that the further objection was made to his testifying that he had not heard all the evidence. It was not necessary to the admissibility of his evidence that he should have heard it all. The same objection was made to testimony of the experts in *Gilman* v. *Strafford*. In that case the deposition of the plaintiff was read to or by the experts, and they were asked to give an opinion on the supposition of the truth of the facts deposed to. There was a large amount of testimony in the case upon the same subject-matters testified to in the deposition, and it was claimed that it was not permissible to put in evidence the testimony of an expert based upon the testimony of any one witness ; but the court held otherwise.

The respondent, for the purpose of showing his insanity, introduced evidence tending to show strange and unaccountable conduct on his part, and that he was sick and greatly prostrated while in jail at Irasburgh, a few days after the homicide. To rebut this evidence the State introduced Dr. Brown as a witness, and asked him whether he thought respondent's condition was feigned or otherwise. Upon objection being made that the witness was not present when the respondent was taken down with the sickness in question, the witness testified that the respondent detailed to him his feelings and symptoms, and he was then permitted to answer the question. There was no error in permitting the question to be answered. It was putting in evidence the opinion of an expert based upon his own knowledge and observation, aided by what was said to him by the party, of his feelings and symptoms.

This disposes of all the exceptions that were taken upon the trial which are now insisted upon ; and none of them are sustained.

The only ground upon which the respondent claims a new trial is for the reason, as alleged in the petition, that William Chamberlain, one of the jurors who tried said cause, had, previous to the trial, formed and expressed an opinion upon the merits of said

cause which was adverse to the petitioner, and was to the effect that he was guilty of the murder charged against him, and ought to be hung in the most summary manner.    The first question to be considered is, do the proofs sustain the allegations in the petition ?    The petitioner relies upon the affidavits of George Clark, Solomon W. Eaton, W. L. Russell, and Henry E. Jackman. These affidavits were taken October 5, 1877, and in them the witnesses profess to relate a part of a conversation that they had with the juror about a year before that time, and soon after the homicide was committed.

The State introduced the affidavits of the same witnesses taken at a different time, and the affidavit of the juror.    The affidavits introduced by the petitioner tend to show that the juror said that the petitioner ought to have been strung up, or hung, without judge or jury before he left Derby Line.    In order to understand what was said, and the circumstances under which the expressions attributed to the juror were uttered, it is necessary to consider all the affidavits together ; and, when thus considered, it is found that what the juror said as indicating his opinion was based wholly upon what the witnesses making the affidavits then communicated to him.    He had no authentic information upon the subject, and it is to be observed that he did not *in terms* express any opinion of the prisoner's guilt.    The question of his sanity does not appear to have been alluded to, and upon his trial that was made the issue upon which his guilt or innocence was to be determined. There is no proof that the juror had any information upon that subject previous to the trial, or had formed an opinion upon the question.    The object of the rule which makes the formation and expression of an opinion a disqualification of a juror is, to secure a fair and impartial trial, and that parties shall not be bound by verdicts rendered by jurors who have prejudged the case.    The opinion, to disqualify, must be an unqualified one, and based upon something more substantial than mere rumor.

In *State* v. *Clark*, 42 Vt. 629, the expression of opinion that it was held disqualified the juror was an unqualified opinion as to the guilt of the respondent, and was formed on reading a newspaper account of his examination before the magistrate.

State *v.* Hayden.

Whatever the juror may have said upon the occasions referred to in the affidavits was based upon the unsworn statements then made in his hearing; and if, upon the information he then had, he had an impression that the prisoner was guilty, the presumption is that such an impression would yield to evidence delivered under the solemnities of an oath. And in confirmation of this the juror in his affidavit states that, at the time he was empanneled, he was not aware of any prejudice in his mind against the petitioner, or that he had ever formed or expressed an opinion as to his guilt or innocence; that he is very confident that he never said that the petitioner ought to have been strung up without judge or jury before he left Derby Line; that he has no recollection of ever having said any such thing, or had any such feeling.

We do not think that the evidence shows the formation and expression of such an opinion as legally disqualified the juror. And upon a full and careful consideration of the case as developed by the exceptions, petition and proofs, it appears to us that the petitioner has had the full benefit of all the rights which the constitution and laws of the State secure to him in making his defence against the charge which was preferred against him.

The petition is dismissed, the respondent takes-nothing by his exceptions, and judgment is rendered upon the verdict.