Addison.
January,
1831.

JOEL BOARDMAN AND CLARK FOOT *vs.* CHARLES AND JOHN W. WOOD.

A & B having become sureties for C,he executed to them certain promissory notes as an indemnity. A & B afterwards commenced suits on these notes and attached C's property thereon : whereupon W, a creditor of C, agreed with A & B, that if they would discharge their attachments, he, W, would not sue C within one year. A & B accordingly discharged the attachments. W having commenced an action against C within the year, and therein arrested him in another state,—it was held in an action brought by A & B against W for the violation of said agreement,

That C was a competent witness for the plaintiffs in said action ;

That the plaintiffs were entitled to recover such damages as they had sustained by the *breach* of the contract, taking into consideration all the circumstances of the case ;

That the testimony of commissioners who had taken the evidence of A & B, to be used in another case, was admissible to qualify or explain their depositions, or to show that they, at the time their testimony was taken, had stated certain facts which the commissioners had not inserted in the depositions, because such facts were deemed irrelevant ; and

That a juror must have *expressed*, as well as *formed*, an opinion on the merits of the case, in order to disqualify him from sitting.

This was an action of *assumpsit*, brought against *C.* and *J. W. Wood* on an alleged agreement made by them with the plaintiffs, *Joel Boardman* and *Clark Foot,* not to sue one Horace Boardman, a debtor to the defendants, within one year from the time of making the agreement. Plea the *general issue.* The facts in the case are particularly narrated in the following bill of exceptions, which was allowed at the trial in the county court :

" On empanneling the jury, one of the jurors, in answer to an inquiry put to him, stated,that he heard most of the case on a former trial, and then formed an opinion in relation to it, and might have frequently expressed it, though he could not recollect whether he had or had not. The counsel for the defendants objected to the competency of said juror on the ground that he had *formed* an opinion, and could not say but he had expressed it ; but the court overruled the objection, and decided that though the juror had formed an opinion, still, if he had not *expressed* it to others, he was not disqualified ; to which decision the counsel for the defendants excepted,

The plaintiffs offered Horace Boardman, named in said declaration, as a witness. The defendants objected to his competency on the ground that he was interested in the event of the suit ; but the court overruled the objection, and admitted the witness to testify : to which decision the defendants excepted. The plaintiffs then introduced evidence tending to show, that previous to the          day of August, 1826, they had become holden, as sureties for the said Horace Boardman, to several houses in Troy, in the state of New-York, to the amount of about $——; and that to indemnify the said *Boardman* and *Foot* for their said liability, the said Horace Boardman, on the          day of February, 1826, gave to them his promissory note for the sum of $——,

made payable *on demand*, with interest; and on the      day of
August, the said Horace gave the plaintiffs another promissory
note for the sum of $——, payable on demand, with interest.
The plaintiffs further gave evidence tending to prove, that in the
fore part of November, 1826, they commenced suits on the said
notes so given them by Horace Boardman, and attached the goods
and other property of said Boardman, estimated to be sufficient.
to secure the demands on which they were taken, and shut up the
store of the said Horace in Middlebury; and that afterwards,
about the 8th day of November aforesaid the plaintiffs released
their said attachment upon the property of said Horace at the re-
quest of the defendants, and in consideration that the defendants
had agreed not to sue or attach the said Horace Boardman in one
year, if the plaintiffs would release their said attachment.    And
the plaintiffs proved that they relesaed their said attachment upon
the goods, &c., of the said Horace.·  The plaintiffs also gave evi-
dence tending to show, that in June, 1827, within one year after
making said agreement, the defendants did arrest the said Horace
Boardman in the city of New-York, and seized a large amount of
property and applied it on their debt; and that immediately af-
terwards the plaintiffs attached again the goods, &c., of the said
Horace in Middlebury; and that in the month of      following the
plaintiffs took the said property, last attached, of the said Horace
at the sum agreed upon between them, of $2122,22, and indorsed
the amount on the notes given by the said Horace to the plaintiffs;
and that all the debts of the said Horace were transferred to
plaintiffs at, or near, the time of said last mentioned attachment,
out of which they had realized the sum of $481 : and also evi-
dence tending to prove, that nothing further had been, or proba-
bly would be, realized from the said books. It appeared that
Horace Boardman, in November, 1826, at the time of the alleg-
ed contract between the plaintiffs and defendants, was indebted to
the defendants, in the sum of $1500 or $1600, which was still
due, excepting about $640, which the defendants received from
the sale of some potashes, belonging to said Horace, in New-York,
in June 1827, before mentioned.   And it was also proved that
the said Horace owed in New-York, in addition to his said
debt to defendants, about · $400, in November, 1826.   The
plaintiffs gave evidence, consisting of statements which the defen-
dants made to them, and other evidence, tending to show, that, at
the time of making said supposed contract, the said Horace had
sufficient property in his hands, including the property so attach-
ed as aforesaid, and the debts due him, to pay all the demands
which he owed, and about $1500 more, according to an estimate
then made by said Horace and his clerk; and also gave evidence
tending to show, that said Horace continued his business as a
merchant in Middlebury during the ensuing winter, and carried to
New-York in the spring about $700 worth of pot ashes, out of
which he received of said *Woods* about $60; and that said

ADDISON,
January,
1831.

Boardman et al
vs.
Wood et al.

Addison,
January,
1831.
————————
Boardman et al
vs.
Wood et al.
Horace had assigned to the plaintiffs certain claims against sundry persons in Franklin county, arising from goods sold by one Cornish, the amount of which the witnesses did not know ; and that it was doubtful whether much, if any thing, might yet be realized from said claims in Franklin county, and from the debts and demands in Middlebury, as aforesaid ; but that in November, 1826, the said Horace, by his own estimate, had about $2000 worth of demands due to the store at the time of said alleged con‧tract ; and that in June, 1827, or at the time he assigned and transferred his demands to the plaintiffs, as well as his goods, &c., he had, at least, $1200 worth of demands, which passed into the hands of the plaintiffs. Evidence was given tending to show, that there was a list of the demands assigned made out at the time, but that it was lost, and that the sum received and credited was all that had been received and credited, and that the balance was bad. The account books of the said Horace was in evidence and a statement of monies received by plaintiffs and their attorney amounting to $481, as before stated : but there was no further or other exhibit of the amount of claims, so assigned to said plaintiffs, in Middlebury, or of said claims in Franklin county. It also appeared that there was a balance due on said account books of said Horace of $106, from said *Foot*, and no explanation was given of said balance, apparently due as aforesaid, or of any other balances apparently due on said books of account ; but on all these points the plaintiffs offered evidence tending to show the situation of all the accounts and items mentioned, and their probable result. It appeared that the said supposed contract was made with *Charles Wood*, one of the firm of *C. & J. W. Wood*, at Middlebury aforesaid, in the name of the firm of *C. & J. W. Wood* ; but no evidence was offered tending to show that he was authorized by his partner, *J. W. Wood*, to make such a contract on account of the partnership.

The defendants offered in evidence the depositions of *Joel Boardman* and *Clark Foot*, the plaintifls, taken in the case between the defendants and Horace Boardman, which, with the commission and interrogatories attached thereto, are made a part of the case, tending to prove that the said *Joel* and *Clark*, had sworn that they released their attachment upon the property of said Horace in November, 1826, at the *request* of, *and by an arrangement with*, the said Horace Boardman, and not the said *Woods* ; which were admitted. The plaintiffs then offered to show by the commissioners who took the said depositions, that the said *Clark*, when he made his deposition, stated to said commissioners, that he and *Boardman* had made a contract with the the *Woods*, and that they released their attachment by virtue of a contract with said *Woods*, and did not wish to state any thing inconsistent with such contract, and that the said commissioners told him he must testify only as to the contract with Horace Boardman. To the admission of this evidence the defendants

objected; but the court admitted the testimony; to which the defendants excepted.

The plaintiffs showed that judgements had been recovered against them on the demands for which they had been holden for the said Horace in Troy, as aforesaid, but that they had paid nothing for the said Horace when this suit was brought. Upon this evidence the counsel for the defendants contended, that as the plaintiffs had no *debt* against the said Horace, but were merely his sureties, they could not maintain this action; that as the plaintiffs had refused to furnish clear and positive testimony of the situation and value of the said Horace's demands, at the time of the assignment to them, or of the situation of the demands in Franklin county, as aforesaid, and had neglected to explain the apparent balance due from said *Foot* and others, that they were entitled to recover only nominal damages, or that the jury in estimating the damages they had sustained, might charge them with the nominal amount of the said demands which passed into their hands, as aforesaid, and that the rule of damages could not in any event exceed the notes and claims for which the said *Joel* and *Clark* were holden for the said Horace in Troy, in 1826, and the interest thereon.

The court charged the jury, that this action was sustainable by the plaintiffs, if from the testimony they believed the plaintiffs had proved the contract set forth in the declaration, and a breach of the same; that if there was any such contract, it was not for the eventual security of the demand of the plaintiffs against Horace Boardman; for if it had been kept by the defendants, and Horace Boardman had failed, and the plaintiffs thereby had lost their debt, they would have had no claim on the defendants. But if the contract was proved to the satisfaction of the jury, and the defendants had broken the same, the plaintiffs would be entitled to recover such damages as they had sustained by the *breach*; and that in estimating these damages the jury would take into consideration the security which the plaintiffs had obtained for their demand when the contract was said to have been made, the situation and ability of Horace to pay or secure them when the contract was said to have been broken, the amount which the plaintiffs had received from Horace, on account of their claim against him, and also the prospect of their recovering or securing any thing hereafter from Horace Boardman, as he still remained liable to the plaintiffs for whatever they had paid, or might have to pay for him; and if a recovery was had in this case, it would not be for the benefit of Horace nor could he avail himself of any benefit of the same against the plaintiffs; that the damages could not exceed the amount of the judgements recovered against the plaintiffs, as sureties for the said Horace, including the *costs* in each suit; but the jury might give to that amount, deducting what the plaintiffs had received, or were likely to receive, agreeably to the directions already mentioned, if the evidence would warrant a recovery to that amount. A verdict was given for the plaintiffs for the sum of $ ——."

Boardman et al
vs.
Wood et al.

The case now came before this Court on a motion by the defendants for a new trial, founded on an alleged error of the county court in the several decisions, and charge to the jury, as mentioned in said bill of exceptions.

After argument, *the opinion of the Court was delivered by*

WILLIAMS, J.—The following questions arise in this case : 1st. Whether Horace Boardman was a competent witness for the plaintiffs. 2d. Whether the testimony of the commissioners who took the evidence in the case between the defendants and Horace Boardman, ought to have been received for the purpose for which it was offered. 3d. Whether the jury were properly instructed in relation to the several demands which had come into the hands of the plaintiffs, and also as to the rule of damages. 4th. Whether the rule adopted by the county court as to the proper inquiry to be made of a juror, in order to a challenge for favor, was correct. The three first questions have not been urged as strongly as the last. They have, however, been insisted on by the defendants, and must be decided by the Court.

On the first, we can discover no principle of law which would exclude Horace Boardman from being a witness, either for the plaintiffs or defendants. The contract declared on was a separate and independent contract, between the plaintiffs and defendants, and in no way for the benefit of the witness. The plaintiffs were sureties for him, and he was, and is, bound to indemnify them ; and this is the extent of his obligation to them. This obligation he must fulfil, whether the plaintiffs succeed or fail in their suit against these defendants. Whatever injury the defendants have occasioned to the plaintiffs by the breach of the contract they made with them, *they* must remunerate the plaintiffs therefor. And as the witness was no party to that contract, he can claim no benefit therefrom. There is no rule of equity, as has been supposed, which would enable the witness in a court of chancery to have appropriated to his benefit the damages which the plaintiffs may recover in this suit. If a court of chancery could do any thing upon the subject, it must be, to compel the plaintiffs to assign to the defendants their claim against Horace Boardman, on the defendants paying the amount of this verdict. But the liability of Horace Boardman is not, and cannot be, altered by any transaction between the parties to this suit on the subject of their contract.

The second objection which has been made seems to be foun-

ded on the idea that the deposition of a witness is like a contract in writing,which cannot be explained or contradicted by parol evidence. The admissions of a party, whether contained in a written deposition or not, are never considered as conclusive evidence against him. The rule as to all conversations, declarations, or admissions, is, that the whole must be taken together, and if a witness is precluded form stating the whole of a transaction because it is unnecessary, or irrelevant to the point in issue, there can be no objection against introducing evidence to explain this when his testimony is made use of against him. In this case the plaintiffs,who were the witnesses in the former case,were called to testify in relation to a contract different from the one which they are here endeavouring to substantiate, and between different parties,and their depositions given upon that occasion are made use of, to prove an admission by them, that a contract was made inconsistent with the one which they are here endeavouring to enforce. If at the time they made those depositions, they were about to state this contract between them and the defendants, or did state it, and it was not made part of their depositions, because it was considered irrelevant to the cause in which they were testifying, it was competent for the plaintiffs to shew that fact in evidence. The testimony of the commissioners was, therefore, properly received.

The third question arises from the charge of the court on the subject of damages; and the enquiry here must be, whether the jury were misdirected. In stating a case it is not usual to set down all the remarks which the court made in their charge. The directions which they gave must be so stated, that this Court can see whether the jury were misdirected; and we are not to enquire whether by any possible construction of the case it can be conjectured that a jury may have drawn a different inference from the charge than what was intended. The objections to the charge on this point are three. *First*; that the jury were not properly directed as to the several demands which went into the hands of the plaintiffs, and more particularly the books of accounts. It appears, however, that these books were in evidence to the jury; they were open to any investigation, or to any comments which might be made in argument, or to any evidence in relation thereto; and, in fact, testimony was given, not only as to what had been collected, but as to what might probably be realized therefrom. The jury was directed to take into consideration the amount which the plaintiffs had received from Horace

ADDISON,
January,
1831.

Boardman et al
*vs*
Wood et al.

ADDISON,
January,
1831.

Boardman et al
vs.
Wood et al.

Boardman, as well as the prospect of their recovering or securing any thing from him thereafter, and to deduct from what they might find to be the claim of the plaintiffs, such sum as they had already received, or were likely to receive, thereafter. This direction was sufficient, and all the defendants could claim of the court. *Second* ; as to the costs in the suit, which had been brought against the plaintiffs as sureties for Horace Boardman. The damages which the plaintiffs sustained by the breach of the contract made between them and the defendants, might amount to the whole of their claim against Horace Boardman, if he was rendered wholly unable to indemnify the plaintiffs in consequence of the conduct of the defendants, and would have been of ability fully to indemnify them if permitted to pursue his business. The plaintiffs were entitled to a full indemnity from Horace Boardman, for all they had been compelled to pay for him to any amount, not exceeding the amount of the notes which they had taken from him, which would embrace all the costs which they had been compelled to pay in the suits commenced against them as sureties of Horace. If then the evidence warranted a recovery in favor of the plaintiffs for the amount of these demands against Horace Boardman, this must include the costs of the suits which had been instituted against them. We can see no reason why the plaintiffs should not recover against these defendants, the amount which they had been compelled to pay as sureties for Horace, whether it was for debt or cost, if from the evidence it appeared that they had been injured to that amount by the breach of the contract made between the plaintiffs and these defendants. There was no misdirection in this particular. *Third* ; to the instructions to the jury as to what subjects were proper for their consideration in assessing the damages. The jury were directed that the plaintiffs were entitled to recover such damages as they had sustained by the *breach* of the contract. In estimating these damages, a variety of considerations would necessarily present themselves. The contract on which the plaintiffs declared was not a contract for the ultimate security of their demand against Horace Boardman. The ability of Horace to pay the plaintiffs at the time the defendants, in violation of their undertaking to the plaintiffs, arrested him in New-York, and broke up his business, together with the prospect, from his youth and habits of business, of their realizing any thing thereafter, were proper considerations to influence the jury in reducing the damages. On the other hand, if the defendants, by a violation of their engagements, had availed

themselves of the means which Horace had to indemnify the plaintiffs, and had occasioned such a sacrifice of his property as to put it out of his power to indemnify them, and had thereby caus- ed a loss to the plaintiffs of the whole of their claim against him —they were entitled to recover to that amount of the defendants. The consideration for the contract, on the part of the plaintiffs, was their relinquishing the attachment which they had laid on the property of Horace. If their debt against him was of no value, and if they had given up nothing as a consideration for the undertaking of the defendants, they could have had no claim against the defendants for damages for not fulfilling that undertaking. The jury, therefore, should take that subject into consideration in estimating the damages. The amount of the damages which the plaintiffs sustained, from the nature of the case, must have been, in some measure, a subject of conjecture, depending upon considerations which would strike the minds of different individuals in a different manner. We think the jury in this particular were properly instructed to take these different subjects into consideration, confining them in their estimate of the damages, to those which the plaintiffs had sustained by the *breach* of, and not by *making*, the contract ; and if there was any difficulty in their doing justice, it resulted from the nature of the case, and not from any misdirection. If the defendants have been condemned in too large an amount, it has arisen from the impossibility of arriving at any accurate conclusion, and from the conduct of the defendants at the time they violated their engagements with the plaintiffs, which was calculated to induce a jury to give damages to the full amount which the plaintiffs had suffered.

The *fourth* question which arises in this case has been the most relied on in the argument, and it is in effect whether the court were bound to have excluded the juryman challenged. It does not often become necessary for the court to decide what shall be a legal objection to a juror. There are usually a sufficient number of jurymen present, and the court, in the exercise of their discretion, frequently direct another juryman to be called when there are objections to those named, which do not amount to a legal cause of challenge. But when it becomes necessary to resort to talismen by rejecting a standing juror, there ought to be some legal cause of challenge before he is rejected. In this case, if the challenge had been allowed when there was no legal objecton, it would have been a ground of exception on the other side. While it is important that every juror should be free from all rea-

XXX

sonable exceptions, it is also important that trivial objections should not be listened to. The court cannot with propriety set aside a juryman and call on a talisman, unless it is upon a legal objection. If the juror who was challenged in this case ought to have been set aside because he had formed an opinion, either party could have challenged him. And, indeed, it would have been the duty of the court to have rejected him, without waiting for a challenge, unless both parties mutually consented to his remaining in the seat. Considering this a question to be determined by authorities, we have examined the cases which have been presented.

At common law, it is a good cause of challenge to a juryman that he has *declared* his opinion beforehand ; yet this has been adjudged to be no cause of challenge, when it has appeared to proceed not from ill will, but from a knowledge of the cause.–2 *Hawk. P. C. c.* 43, *s.* 28, *p.* 589. In a case in the *Year Books* it was said by *Babington, J.,* " that if a juror say twenty times that he " will pass for one party for the notice which he has of the party, " and of the truth, he is indifferent ; but if he say so for any af- " fection of the party, he is favorable, and the challenge must be " allowed."—21 *Viner*, 266. Without going into an examination of all the cases, it will be sufficient to refer to the case of the *King* vs. *Edmonds, (*4 *Barn. and Ald.* 471,) where the subject was considered, and many of the cases examined. In this case, in my opinion, it was clearly shown that the rule of the common law was, that in order to exclude a juryman, it must be shown, not only that he has declared his opinion beforehand, but that it proceeded from ill will towards the party challenging, or from a preconceived opinion of his guilt. And it is for this reason the question is not permitted to be asked of a juryman, in a criminal case, whether he has expressed opinions unfavorable to a respondent, as it would tend to his dishonor to express ill will towards a party accused of a crime in regard to the matter of accusation. But in a civil cause, a juryman may be asked, " if he has not given his opinion beforehand ; for he might have done it as an arbitrator."—1 *Salk.* 153. Among the causes for challenge to a juror, we find this, that if he had been a juror in the same cause, or had been an arbitrator, it is a good cause of challenge, although it has been said, that it is no cause of challenge to a juror, " if he was " indifferently chosen as an arbitrator by both the parties, though " he has treated of the matter ; although it would be if he was cho- " sen by the plaintiff or defendant, if he had been informed of, or " treated of, the matter."—*Complete Juryman,* 120. And a re-

ference is made to 1 *Inst.* 157, and several cases in the *Year Books*, as authorities for this position. No case has been read to show, that it is a good cause of challenge to a juror, that he has *formed* an opinion in the case; but all the English authorities, which we have seen, establish the contrary doctrine; and it would be impossible to reconcile it with the decision of the Supreme Court of the state of New-York, in the case of *Durell* vs. *Mosher*, *(8 Johns.* 347 ;) and we are fully satisfied that the rule is otherwise.

A reference to the American cases, where this question has been considered either directly or incidentally, confirms us in this opinion. In the trial of Callender before *Judge Chase,* it was decided that the proper inquiry to be made of a juryman was whether he had formed and *expressed* an opinion of the guilt of the person charged. It is true, the conduct of the judge in this trial was much animadverted on at the time, and was made the subject of one of the articles of impeachment prefered against him ; but his decision of the question has always been sustained, and was confirmed by *Chief Justice Marshal* in the trial of Burr. In the last mentioned trial the chief justice says that the proper question to be propounded to a juryman is, "have you made up and *delivered* the opinion that the prisoner is guilty or innocent of the charge laid in the indictment ?" And it is worthy of notice, that, although the counsel for the United States adverted to the trial of Callender, and declared that he should not contend for the rule as laid down in that trial, but admitted that it might be a good cause of challenge if a juryman had *formed* an opinion, yet the *Chief Justice,* whenever he mentions the subject, is careful to say "*formed* and *expressed,* or *formed* and *declared an opinion, &c.*;" and in the opinion then given by him, this expression is made use of a number of times. The impeachment of *Judge Chase* had then but recently been decided, when this same subject had been in controversy ; and *Chief Justice Marshal,* both by his decision in the case, and by the cautious and guarded manner in which he expresses himself, leaves us in no doubt that he recognized the rule laid down by *Judge Chase,* as the rule of law to be adopted in all similar cases.

*C. J. Swift,* in his digest, 775, says, that if a juror have formed and *expressed* an opinion upon the merits of the case, it is good ground to set aside the verdict, if unknown to the party, &c.

In this state the subject was fully considered in the case of *Godfrey, (Brayton's Rep.* 170,) a case which excited great interest, and in which every question was carefully and cautiously

Addison,
January,
1831.

Boardman et al
vs.
Wood et al.

investigated, and it was decided that a person who had *expressed* his opinion was not a competent juror.

Boardman et al
*vs.*
Wood et al.
In the trial of *Vermilyea*, in the city of New-York, a challenge to a juryman who had formed and delivered an opinion upon the merits of the cause, was overruled at the circuit. This decision, however, was set aside by the Supreme Court of the state of New-York.— *Ex parte Vermilyea*, 6 *Cowen*, 555 ; and *People* vs. *Vermilyea*, 7 *Cowen*, 108. In the opinion of the court in the two cases last mentioned, *Judge Woodworth* sometimes makes use of the expression, that if a juror had formed *or* expressed an opinion, it might be a good cause of challenge ; and he refers to the opinion of *C. J. Spencer*, in the case of the *People* vs. *Van Alstine*, and *Coleman* vs. *Hagerman*, and also the opinion of *Judge Story*, where the same expression is made use of. It may be observed, however, that in every case mentioned the juror had *declared* his opinion, and in the case of *Vermilyea* it was a preconceived opinion of the guilt of the persons accused ; and in the case of *Coleman* vs. *Hagerman* it clearly indicated ill will. He mentions no case, however, where a challenge has been allowed against a juror on the ground of his having formed an opinion on the merits of the case, when he had not made known by his declarations for which party that opinion was formed. It is very evident that the expressions made use of by the judge in that case must be understood as equivalent to *formed and declared*. And indeed if this was not his opinion, it would be altogether surperfluous to say any thing about an opinion *declared*, if an opinion formed was a good cause of challenge. An opinion *declared* must be an opinion *formed*.

From an examination of the authorities, we are inevitably led to the conclusion that the decision of the county court on this question was conformable to the common law as found in the English Reports, and as recognized in the courts of the United States and in this state, and must be considered as correct so far as any principle can be settled by authorities. It has been strongly urged that there is no reason for this distinction. It is sufficient for us to declare the law as we find it, though we may not know why it was so established. Possibly the reason urged at the bar may have had some influence, that men are more tenacious of an opinion which they have declared, and are less likely to listen to any reasons which may be urged against it. Further, every opinion which a juryman had formed in relation to a cause would not afford a good reason for challenging him. The opinion must be declared to enable the court to judge whether it should

disqualify him from serving as a juror. In many cases of a pub-
lic nature almost every one who has heard of the transaction will
have formed some opinion upon the subject, and it would be dif-
ficult, if not impossible, to procure a jury who had not formed an
opinion. In the case under consideration the opinion which the
juror had formed is not now known : it may have been in favor of
the party challenging ; and the same reasons, which are now urg-
ed why he should have been set aside, would probably have ope-
rated to exclude every person who had been in the court house
during the former trial of this case. But if there are no sufficient
reasons for the law as we find it, we do not feel at liberty, against
the weight of all the authorities, to change the rule which was
adopted in *Godfrey's* case, and subject parties hereafter to the
difficulties and hazard which may arise from conflicting decisions
on this subject. Very probably, if we should alter the rule, we
might learn from experience that it was founded on good reason.
It is said, " that it hath been an ancient observation, that when-
" ever a standing rule of law, of which the reason perhaps could
" not be remembered or discerned, hath been wantonly broken
" in upon, by statute or new resolutions, the wisdom of the rule
" hath in the end appeared from the inconveniences that have fol-
" lowed the innovation."

     The judgement of the county court is affirmed.

*Bates & Phelps*, for plaintiffs.

*Linsley & Bailey*, for defendants.