STATE *v.* EMELINE L. MEAKER.

*Criminal Law. Murder. Separate Trial. Peremptory Challenge. Disqualification of Juror Based on Formation and Expression of Opinion.*

1. When two are jointly indicted it is discretionary with the County Court whether to grant them separate trials or not ; and its decision is not revisable in the Supreme Court.

2. The right of peremptory challenge is the right not to *select*, but to *reject* jurors; hence, when one of the respondents peremptorily challenged a juror, and the other insisted that he was qualified and should sit in the trial, the court properly excused such juror.

3. The formation and expression of an opinion are not alone the test of a juror's competency ; but the nature of the opinion may be inquired into; and, if found to be only a transitory inclination of the mind, based upon rumor or newspaper report, &c., the truth of which the juror does not inquire, nor judge, it is not a disqualifying opinion. To work a disqualification there must be an abiding bias of the mind caused by substantial facts in the case, in the existence of which the juror believes; an opinion upon the merits of the case upon the guilt or innocence of the accused of the charge laid in the indictment upon the evidence substantially as expected to be presented on trial.

4. A newspaper report may be so full and of such a character that an opinion formed and expressed from it would disqualify.

5. The question of a juror's competency must be left largely to the determination of the court trying the case.

INDICTMENT for the murder of Alice Meaker, charging Emeline L. Meaker and her son, Lewis Almon Meaker, jointly with the murder. Both pleaded, not guilty; trial by jury. September Term, 1880, Washington County, REDFIELD, J.. presiding. Before the empanelling of the jury, the said Emeline L., moved for a separate trial; but this motion was overruled by the court. In empanelling the jury Lewis Almon Meaker peremptorily challenged three jurors ; at the same time Emeline L. Meaker insisted that they were qualified, and that they should sit in the trial. The court allowed the challenges, and excused the jurors. Mrs. Meaker excepted to the ruling of the court. The three jurors thus excused were J. L. Moseley, I. R. Densmore and G. W. Cardell.

Among the jurors called were Ira O. Thayer, Daniel Holcomb,

and Hiram Templeton, who being severally challenged for cause by the respondents' counsel, testified as follows:

Ira O. Thayer:   By *Mr. Plumley*, for the State.

.     .     .     .     .     .     .     .

Q. This case is an indictment for murder, in which these respondents, Emeline Lucy Meaker and Lewis Almon Meaker, are charged with murdering Alice Meaker ; are you related to the respondents in any of the prohibited degrees ?   A. No.

Q. Have you formed or expressed an opinion relative to the guilt or innocence of the parties ?   A. No.

Q. Have you such conscientious scruples concerning capital punishment as to prevent you finding a verdict of guilty if the evidence should be sufficient to convict ?   A. No, sir.

*Mr. Heath*, for the defence :

Q. In what part of the town do you reside ?   A. The east part.

Q. Your occupation ?   A. A farmer.

Q. You have heard of this case ?   A. I read it in the *Watchman*.

Q. Did you read all the accounts there were published of it ?   A. I presume I did.

Q. You formed some opinion about it from what you read ?   A. If that was the truth of the case.

Q. How ?   A. If that was the truth of it—taking no other evidence against it.

Q. When did you read this account ?   A. Along about that time.

Q. At home or in Northfield ?   A. Yes.

Q. Did you talk with people about it ?   A. I don't remember that I did ; might.

Q. You talked with people as you read it ?   A. I guess not. Nobody only my own folks spoke of it.

Q. Did you tell them what your opinion was ?   A. If that was the facts in the case.

Q. Taking that to be the facts of the case, you told them what your opinion would be ?   A. I thought they ought to be punished if that was all correct.

Q. You in fact did tell them your opinion of the case ?   A. Yes, I made that expression.

Q. They expressed themselves to you, I suppose, too ?   A. Yes, as a natural consequence.

Q. Did you express your opinion a number of times ?   A. I can't say. I don't remember that I did.

Q. How ?   A. I don't remember that I did ; but still I might. ·

Q. I understand you to say that you think you did express your opinion to some one ?   A. Yes, I presume I did.   I don't know certain that I did.   I might.   I presume likely I did at the time I read it.

Q. You really think you did ?   A. Yes, I presume I did.

Q. There isn't much doubt in your mind but that you did ?   A. No.

Q. Did any persons talk with you about it from time to time down to the village or post office, or any place ?   A. Not that I remember of.

Q. Any persons that you met there about those times pretending to know about it ?   A. No, sir.

8

By *Mr. Plumley :*

Q. Can you tell—I don't ask you to tell us—do you now remember what that opinion was ?　A. I don't know as I can tell just the words I used at that time.

Q. Do you remember the substance—the idea you had ?　A. No, I don't.

By *Mr. Heath :*

Q. You don't remember which way your opinion was, then ?　A. Yes, sir.

Q. And that was the opinion that you then expressed ?　A. Yes, sir ; right there.

Mr. Heath : I submit that the juror is disqualified.

REDFIELD, J. :　It seems to us that the opinion which this juror expressed was one which depended upon the truth or falsity of the reports which he then read.　It was not an absolute opinion of the guilt or innocence of the parties ; in other words, it was an hypothetical opinion,— " assuming all this to be so, and there is no excuse, no evidence to the contrary, they would seem to be guilty."　We think that is not such an opinion as disqualified him from being a juror.　Indeed, in this age of newspapers, any man who reads at all can hardly help forming some opinion from what he reads.　The mere fact that he makes up his mind for the time being from what he reads does not necessarily prevent him from discharging his duties as a juror.　I understand this juror to say that if all these statements which he read in the newspapers were true, his opinion would be so and so ; but that wouldn't prevent him from sitting impartially upon the case now, and deciding it upon the evidence which he may hear in the case without prejudice.　I don't think that there is ground for challenging for cause.

Judge REDFIELD then asked the juror :

Q. Do you feel entirely without any preconceived opinions,—so that if the evidence on the stand here should satisfy your judgment that the parties are innocent, you could act upon it and decide the case impartially ?　A. Yes, sir ; I would vote for clearing them just as quick as any other one.

The respondents excepted to the ruling of court, and Mrs. Meaker peremptorily challenged him.

Daniel Holcomb.　By *Mr. Plumley.*

Q. Have you formed or expressed an opinion in relation to the guilt or innocence of the parties ?　A. I read the account in the papers.　I think I did from what I read.

Q. Did you express an opinion ?　A. I presume I did.

Q. Do you recollect that you did ?　A. I think I did.

Q. From what you read in the papers ?　A. Yes.

Q. Do you think there is any reason why you couldn't give these respondents a fair and impartial trial ?　A. No, I don't think there is.

By *Mr. Heath.*

Q. Do you remember to whom you expressed this opinion you did express ?　A. Well, I presume I read the statements in the papers. We are apt to express our opinions as we read it.

Q. You worked with Mr. Davis ?    A. No, I wasn't at work at that time.    I was in the shop at that time.

Q. You have talked it up with Mr. Davis ?    You have visited with him more or less ?    A. Sometimes I do.

Q. Did you discuss it with the hands in the shop ?    A. I presume so.

Q. Do you remember what hands.    A. Charles Shepard was one.

Q. William Park ?    A. No, he was in another shop separate from the shop where I read the account.    . . .

Q. You didn't have an acquaintance with them ?    A. No.

Q. Do you remember whether you expressed this opinion you formed upon any other occasion at that time than what you have mentioned ? A. I presume I have when it has been talked over.

Q. Do you remember what newspapers you read it in ?    A. I read it, I presume, in the *Watchman & Journal* ; and I read it in the *New York World*.

Q. In the *Watchman* there were some general comments on it ?    A. I think there were.

Q. Kind of an editorial upon it ?    A. I presume so.    I don't recollect now in particular about the circumstances—I read it over.

Q. Some reflections by the editor ?    A.    I couldn't say.

Q. Did you read this account at length in the shop ?    A. I read the account of the murder and of the officer's going and getting the body in the shop.

Q. And the testimony that appeared to be ?    A.    I think not at that time.

Q. But you did in the course of time ?    A. Yes, sir.

Q. A general sort of a story, such as a reporter would be apt to get up to be published in a paper ?    A. Well.

Q. The story of it in the paper purported to be a statement of the facts against the accused ?    A. I suppose such facts as they found out.

Q. And upon that and from that you expressed this opinion you did express ?

REDFIELD, J., said to the juror :

Q. Do I understand you that your opinion was based solely upon the hypothesis that that statement in the newspaper was true ?    A. Yes, I had nothing else to base it upon, only what I saw in the paper.

Q. That was a mere hypothetical opinion ?    A. Yes, sir.

Q. Did it make any impression on your mind or prejudice you so that you could not fairly acquit these parties if the evidence on the stand should not in your judgment convict them ?    A. No, I don't think it did.

The court ruled that the juror was qualified ; the respondents excepted to this ruling ; and the juror was sworn and served.

Hiram Templeton,    By *Mr. Plumley* :

.    .    .    .    .    .    .    .

Q. Have you formed or expressed an opinion in reference to guilt or innocence of either of them ?    A. I formed something of an opinion when I read the account in the papers.

Q. Have you had any other means of information except what you had in the papers ?    A. No, sir.

Q. Do you recollect whether you expressed your opinion to any one at that time ?    A. I think I talked with the neighbors about it.

State *v.* Meaker.

Q. Do you think in that talk you expressed an opinion with reference to their guilt? A. I don't think I did. I don't recollect.

Q. Do you think there is any reason why you can't, at this time, give these parties a·fair and impartial trial? A. No, sir.

Q. You think your mind is not now biased? A. I think not. . . . .

By *Mr. Heath:*

Q. Do you know that you did talk with your neighbors concerning this affair? A. I think I did.

Q. Do you recollect which of your neighbors? A. I don't.

Q. You say you did form and opinion. You have that opinion now? A. I don't know why I don't.

Q. That is to say you have the same opinion you then formed? A. The account I got in the papers of it. Any one naturally would.

Q. And you think that opinion remains to you now in your mind, I understand you to say? A. I don't know why I don't.

. . . . . . . .

Q. And the account in these newspapers appeared to be a statement of the facts in the case, didn't it? A. Yes; gave an account of the affair.

Q. It gave a pretty full statement of the affair, and of the claims which were made by the State officials? A. I shouldn't think so much as that in the *Watchman*. I guess there was in the *Patriot*. I can't recollect.

Q. Do you remember whether there was quite a lot of testimony given which appeared as if reported at the trial? A. I don't recollect.

Q. You say you formed an opinion from those accounts, and you think you talked with your neighbors about it. Don't you think you told them something of what your mind was? A. I don't recollect that I did, in particular. Probably as they gave their opinion, I did mine. But I am very sure I talked with them.

Q. I understood you to say you didn't remember which of your neighbors? A. Yes, I think I did more than one.

*Mr. Heath:* We raise the question of the competency of this juror and ask that he be excused for cause.

REDFIELD, J., said to the juror:

I understand you to say that what impressions you formed were upon the assumption that the accounts you read were correct. You are not prejudiced, but what if it should appear different on the proof here, you could render an impartial verdict?

A. I think I could. I would try to.

The court ruled that the juror was qualified; to which ruling the respondent excepted; and the juror was sworn and served.

After the jury was empanelled, the said Lewis Almon Meaker asked leave to retract his plea of not guilty, and plead guilty. Such leave to retract was granted by the court, when the said Lewis Almon did retract his said plea of not guilty, and thereupon pleaded guilty, when he was remanded to jail; and the trial proceeded against the said Emeline L. Meaker before the jury already empanelled, which resulted in a verdict of murder in the first· degree.

*Heath & Carlton* and *E. F. Palmer*, for the respondent, cited the 51 Vt. 362 ; 3 Vt. 570 ; 42 Vt. 629 ; 2 Va. Cas. 297 ; 16 N. Y. 501 ; 21 Wend. 508 ; Chit. Cr. L. 536.

*Clarence H. Pitkin*, for the State.

1. Respondents jointly indicted are not entitled to separate trials as matter of right: and on a joint trial a juror peremptorily challenged by either respondent must be excused. *United States* v. *Marchant*, 12 Wheat. 480 ; s. c. 4 Mason, 158 ; *Hawkins* v. *The State*, 9 Ala. 137 ; *Bixbe* v. *The State*, 6 Ohio, 86 ; *Maton* v. *The People*, 15 Ill. 536.

2. That a juror has formed and expressed a hypothetical opinion as to the guilt or innocence of a respondent is not ground of challenge for cause. *State* v. *Hayden*, 51 Vt. 296 ; *Baxter* v. *The People*, 8 Ill. (3 Gilm.) 368 ; *Waters* v. *The State*, 51 Md. 430 ; *Guetig* v. *The State*, 66 Ind. 94 ; *Lee* v. *The State*, 45 Miss. 114 ; *Montague* v. *The State*, 17 Fla. 662.

The opinion of the court was delivered by

Ross, J. The respondent was indicted jointly with Lewis Almon Meaker. The indictment charges each with the murder of Alice Meaker by poison. The respondent, after pleading not guilty to the indictment, by written motion, asked and demanded as a legal right to be tried separate and apart from Lewis Almon Meaker. The County Court overruled the motion, to which she excepted. In empanelling the jury the County Court allowed to each respondent the full number of peremptory challenges accorded by statute ; but three of the jurors challenged by Lewis Almon, the respondent insisted should sit in the trial, and excepted to the decision of the court in setting these three jurors aside. After the jury was empanelled in the cause, Lewis Almon Meaker, at his request, was allowed to retract his plea of not guilty, and to plead guilty ; and thereafter the trial proceeded against the respondent alone.

I. It is contended, that the County Court erred in overruling the respondent's motion for a separate trial. The respondent's

counsel contend, that this was error because the respondent and Lewis Almon refused to join in their challenges. This contention is not sustained by the authorities. In *State* v. *Stoughton et al.*, 51 Vt. 362, it is said: "It was discretionary with the court whether to grant them separate trials or not." This is in accord with all the authorities furnished. It was so held in *United States* v. *Marchant*, 4 Mason, 158, and affirmed by the United States Supreme Court, 12 Wheat. 480, on a careful review of the English and American authorities. The citation, in *State* v. *Stoughton et al.*, from 1 Chit. Crim. Law, 536, relates to the right of the court, when respondents are jointly indicted, and, when according each full challenges would exhaust or cause a defect in the panel, to compel the respondents to join in their challenges, and so waive the right to separate challenges, or to be tried separately. It does not sustain the exception. Being a matter of discretion with the County Court to grant or deny a separate trial to each respondent, it is not revisable by this court.

II. It is contended, that by compelling a joint trial, although according full peremptory challenges to each respondent, the court curtailed the respondent's right to select the jurors of the panel by whom she should be tried. The right of peremptory challenge is not an undeniable right, like the right to challenge for cause, but a right conferred and regulated by statute,—a tenderness of the law in favor of life, and liberty—a right not to select, but to reject jurors from the panel without assigning any cause. This is very clearly and satisfactorily shown by Judge STORY, in *United States* v. *Marchant, supra,* as well as by the other authorities cited by the State on this point. Nothing would be added by a review of the authorities, or a restatement of the reasons for the law, as announced. It may be that the legislature could not entirely take away the right of peremptory challenges so long as the constitution gives the respondent the right of trial by a common-law jury. We express no opinion on that point. The doctrine announced does not, as argued, enlarge the State's right of challenge. It simply accords to each respondent, jointly on trial, his separate right of peremptory challenge.

III. The respondent also excepted to the decision of the County Court, overruling her challenge for cause of the jurors, Ira O. Thayer, Daniel Holcomb and Hiram Templeton. The first named juror was peremptorily challenged by the respondent, and the other two were sworn and acted as jurors on the trial. A careful review of the testimony of these jurors, given on *voire dire*, shows, in substance, that the only opinions formed and expressed by them were based upon reports which they had read in the current newspapers, and dependent upon the correctness of those reports, and which had not, in the judgment of the jurors, biased their minds, so that they could not try the case impartially, and convict, or acquit, according as the evidence given upon the trial should convince their minds. It is insisted by the counsel of the respondent, that, by the repeated decisions of this court, the formation and expression of an opinion by a juror is a legal disqualification, no matter what the character of that opinion may be; and that the attempt to have the court hold that a hypothetical opinion, formed, and expressed, upon an assumed state of facts, or rumor, or newspaper report, of the truth of which the juror has no knowledge or conviction, and does not attempt to judge, is an invasion of, a tearing away from, the force of the well established rule of this court on this subject; that it compels the accused to enter upon the trial with the opinion of the jurors against her, which opinion she must remove, before she can stand in the trial, on an equality with the State. The same rule of disqualification of jurors, applies in civil, and criminal cases. It is apparent that if every opinion of whatsoever character, and howsoever formed, whether a mere passing inclination, or a settled conviction of the mind is to work a disqualification of the juror, the difficulty of obtaining intelligent jurors will be greatly increased. In these days of much reading, of multiplicity of newspapers, of great activity, in gathering, and publishing, all items of news, especially those relating to litigation, and crimes, it will be extremely difficult to find an intelligent person, who has not heard some sort of report, or read some sort of a local item, in regard to almost all matters, that are likely to be litigated before a jury; and, if the rule contended for by the respondent's coun-

sel, is established and to obtain,—the non-reading, and comparatively ignorant must be the future jurymen, on whose judgment, the property, lives and sacred rights of the citizens of the State must depend. But however great the inconvenience, especially in a capital case, it is the duty, as well as the pleasure of this court, to declare what the established law of the State is, rather than what in its judgment it ought to be if it were charged with the duty and power of making it anew. This claim, so reaching in its results, as well as so vital to this respondent, demands a careful consideration of the adjudged cases in this State on this subject. In *State* v. *Godfrey*, Brayt. 170, there is no discussion of the question, but a simple announcement, that : " A person who has expressed his opinion is not a competent juror." Neither does the case contain any statement of the facts on which this announcement was made.

*Boardman et al.* v. *Wood et al.*, 3 Vt. 570, is the leading case in this State on this subject. It has been cited, without question, in all subsequent cases. The counsel engaged were of the ablest in the State. The juror, in that case " stated that he heard most of the case on a former trial, and then formed an opinion in relation to it, and might have frequently expressed it, though he could not recollect whether he had or not." " The County Court decided, that though he had formed an opinion, still if he had not expressed it to others, he was not disqualified." The correctness of this decision was the main question relied upon in the Supreme Court. It did not necessarily involve the character of the opinion, the formation and expression of which would work a disqualification ; but incidentally in the review of the common-law and American decisions by Judge WILLIAMS, this question is treated of, and discussed. Speaking of *King* v. *Edmonds*, 4 Barn. & Ald, 471, he says : " In this case, in my opinion, it was clearly shown that the rule of the common law was, that in order to exclude a juryman it must be shown, not only that he has declared his opinion beforehand, but that it proceeded from ill-will towards the party challenging, or from a preconceived opinion of his guilt." Again : " Among the causes for challenge to a juror, we find this, that if he had been a juror in the same cause, or had

been an arbitrator, it is a good cause of challenge." . . "In the trial of Callender before Judge CHASE, it was decided that the proper inquiry to be made of a juryman was whether he had formed and expressed an opinion of *the guilt of the person charged.*" . . "Chief Justice MARSHALL, in the trial of Burr, says that the proper question to be propounded to a juryman is 'have you made up and delivered the opinion that the prisoner is *guilty or innocent of the charge laid in the indictment.*'" . . C. J. SWIFT, in his Digest, 775, says, "That if a juror have formed and expressed an *opinion upon the merits of the case,* it is a good ground to set aside the verdict, if unknown to the party," &c. . . "In the trial of Vermilyea in the city of New York, a challenge to a juryman who had formed and delivered *an opinion upon the merits of the cause* was overruled at the circuit court. This decision, however, was set aside in the Supreme Court." . . And again: "Further, every opinion which a juryman had formed in relation to a cause would not afford a good reason for challenging him." . . "In many cases of a public nature almost every one who has heard of the transaction will have formed some opinion upon the subject, and it would be difficult, if not impossible, to procure a jury who had not formed an opinion." These somewhat extended extracts from the opinion in that case are necessary to show the character of the opinion, the formation and expression of which work a disqualification of a juror. They give no countenance to the unlimited claim of the respondent's counsel; but conclusively show that it must be an opinion *upon the merits of the case,* upon the *guilt or innocence of the accused of the charge laid in the indictment,* upon the evidence substantially, as expected to be presented for the consideration of the jury on the trial of the case; or an opinion indicative of ill-will towards the accused. *State v. Clark,* 42 Vt. 629, is much relied upon by the respondent's counsel. In that case the juror had expressed an opinion as to the guilt of the respondent on reading a newspaper account of his examination before the magistrate, published a few weeks before; but said, "That he then had no opinion and had formed none, and could try the case impartially." The County Court held that the juror was not disqualified. The Supreme Court held that he

was disqualified.    There is no consideration, or discussion, of the kind of opinion the formation and expression of which work a disqualification.    It is assumed that the character of the opinion expressed was such, " as to the guilt of the respondent " based upon an account of his examination before the magistrate, as would work a disqualification.    We are not informed how full the examination before the magistrate was.    It might have embraced substantially all the evidence in the case, and so the opinion have been expressed, as to the guilt of the respondent, upon the substantial merits of the case.    It was assumed, rather than expressed, to be such.    There is no attempt to limit the scope of the decision in the 3d Vt.    Rather that decision is made the authority for the decision then announced.    Some of the expressions used by the Chief Justice in the opinion are quite broad, and give countenance to the claim of the respondent's counsel.    But they were used in combatting the idea, which evidently had been pressed upon the court, that, although a juror had formed and expressed an opinion upon the merits of the case, substantially ; yet if he thought he could try the case impartially on the evidence given in court, he was an impartial juror under the constitution, and must be read, keeping in mind the purpose they were intended to serve.    We are the more convinced that such were the views of the learned Chief Justice, from the decisions of the court subsequently made, in which he participated.    He participated in the decisions of *State* v. *Phair*, 48 Vt. 366, and *State* v. *Hayden*, 51 Vt. 296 ;   and fully concurred in the views announced in those cases.    The opinions in those cases were submitted to him, and the other members of the court who sat at the hearing of those cases, before they were promulgated ;   and are understood to express the views of every judge who participated in the decisions. In *State* v. *Phair*, several of the jurors were challenged for cause, because they had read newspaper accounts of the transaction, and formed some opinion thereon, but did not recollect that they had expressed the opinion thus formed.    They were held not to be disqualified.    It is true that the decision is placed largely upon the case in the 3d Vt., holding that the formation of an opinion alone, does not disqualify.    But the court were pressed by a large array of

authorities, holding that the formation of an opinion renders the juror partial, and so disqualifies. This led the court to consider the character of the opinions formed by the jurors, claimed to be disqualified. The language of the opinion is pertinent on this question; and is as follows: " But it is claimed that the rule is an unreasonable one, and the court are called upon to adopt a rule that will make the formation of an opinion a disqualification, and which will exclude every man from the jury-box who has formed an opinion, irrespective of the evidence or circumstances upon which the opinion was formed. Men frequently form an opinion from reading an account of a transaction in a newspaper, as did the juryman in this case. Such opinions are formed relying upon the truthfulness of the published accounts, and are subject to be changed and altered by contradictory accounts. Men form opinions almost imperceptibly, from hearing and reading ; and opinions thus formed do not generally disqualify them from rendering a fair and impartial judgment when duty calls for its exercise. Persons accused of crime need intelligent jurors to judge of the truth, or falsity, of the charges preferred against them ; and the adoption of the rule contended for would operate to exclude reading, intelligent men from the jury-box, and their places would have to be supplied by the ignorant and incompetent. If any new rule is to be adopted, it seems to me, it would be more reasonable, not to make the formation and expression of an opinion the arbitrary test of a juror's competency ; but to permit an inquiry to be made as to the facts and circumstances upon which the opinion was formed ; and if upon such inquiry it should be found that the juror was free from bias or prejudice, and could and would fairly and impartially judge of the matters to be submitted to him, he should be held to be competent." If we have correctly interpreted the decision in the 3d Vt., what is spoken of in the above quotation, as the new rule to be adopted, is in substance the old common-law rule announced in the leading case of *Boardman* v. *Wood, supra.* The petition for a new trial in *State* v. *Hayden*, 51 Vt. 296, presented the precise question under present consideration. One of the jurors in the case who had, on preliminary examination, denied that he had ever formed and

expressed an opinion as to the guilt of the respondent, was shown, by four unimpeached witnesses, to have said on hearing the transaction related, immediately after it occurred, that the respondent ought to have been hung, without judge or jury. The juror's affidavit tended to show that he had no recollection of making such declaration, and that he in fact had no bias against the respondent. The court found that the opinion testified to was based wholly upon what the witnesses then told the juror; that it was not formed upon authentic information, and did not *in terms* express any opinion of the prisoner's guilt; that the question of sanity on which the defence was based was not alluded to; that it was not an unqualified opinion of the guilt of the respondent based upon an account of the examination before the magistrate as in *State* v. *Clark.* " The object of the rule"—the court say,— " which makes the formation and expression of an opinion a disqualification of a juror, is, to secure a fair and impartial trial, and that parties shall not be bound by verdicts rendered by jurors who have prejudged the case. The opinion, to disqualify, must be an unqualified one, and based upon something more substantial than mere rumor." . . " We do not think that the evidence shows the formation and expression of such an opinion as legally disqualified the juror." We have thus reviewed all the decisions of this court upon this subject. The result is, that from the beginning, it has been held that the opinion which disqualifies must be an opinion upon the case, and not upon rumors, and newspaper reports about the case, in regard to the truth of which the juror has no established belief either way. The newspaper report may be of such a character, as for instance, the publication of the evidence given on a former trial, or, of such a detailed account of the facts and circumstances of the case, that an opinion founded and expressed thereon, would and should disqualify. Information brought in any manner to the attention of the juror in regard to the case may be so full and complete, and under such circumstances, as would convince the mind of the truth of the information, and lead to the formation and expression of a disqualifying opinion. But it is not the formation and expression of every opinion in regard to the case that disqualifies a juror. It must

be something more than a transitory inclination of the mind on a partial account of the transaction, in regard to the truth of which the juror does not inquire, nor judge. It must be an abiding bias of the mind, based upon substantial facts in the case, in the existence of which he believes. Such is the result of our decisions ; and of the great majority of the decisions of the courts of last resort in other jurisdictions. Under no other rule could the law of jury trials be intelligently administered. Opinions may and do differ widely in character, from a transitory inclination of the mind to an unwavering conviction. Its character must be left largely to the determination of the court before which the trial is had, upon the evidence adduced at the preliminary examination. If it is found to amount to a substantial bias in regard to the case on trial, the cause for challenge is established, and the juror is not impartial within the meaning of the constitution, whatever he may himself think about his ability to try the case impartially. The intelligent juror, when asked whether he has formed and expressed an opinion in regard to the case on trial, without further qualification, hardly knows what answer to make. This is well illustrated by the case in hand.

The juror, Thayer, when asked by the State if he had formed or expressed an opinion relative to the guilt or innocence of the parties, answered, no. But on being asked by the counsel of the respondent if he read the accounts in the newspaper, answered in the affirmative. Then the counsel asked him : " You formed some opinion about it from what you read ?" and he answers, " If that was the truth of the case." The juryman Holcomb having listened to this examination of Thayer, when asked by the State, " Have you formed or expressed an opinion in relation to the guilt or innocence of the parties ?" answered, " I read the account in the papers. I think I did from what I read " ; and the juror Templeton on being asked substantially the same question, answers, " I formed something of an opinion when I read the account in the newspapers." They all deny that they had any other information on which they formed or expressed their opinions. It is evident their opinions were dependent upon the truth of the statements read, without attempting to judge of, or determine

whether they believed the statements read.  It can hardly be doubted if they had been asked, whether they had formed and expressed an opinion based upon substantial facts in the case which they believed to exist, in relation to the guilt, or innocence, of the accused, they would each have answered in the negative.  It is difficult, to express in language the exact line of demarcation, between an opinion which disqualifies a juror, and one which does not.  The opinions of the jurors challenged for cause in this case, we are satisfied were not of a disqualifying character, but were, what are often denominated hypothetical opinions.  If some of the expressions in the opinion of the court in *State* v. *Clark* should be thought to be at variance with the conclusions announced, they must be held to have been limited and modified with the consent and approval of the learned Chief Justice by the views expressed in the subsequent cases of *State* v. *Phair* and *State* v. *Hayden.*

On full, and careful consideration, we are satisfied that the County Court committed no error in the matters excepted to by the respondent, and the judgment is, that the respondent takes nothing by her exceptions, and judgment is rendered on the verdict.