[No. 1807.]

## GILPIN HESKEW v. THE STATE.

1. PRACTICE — JURY LAW — CHALLENGE — CASE STATED. — The right of peremptory challenge is not of itself a right to select, but a right to reject jurors. It excludes from the jury those whom the prisoner objects to, until he exhausts his peremptory challenges. The right of challenge, therefore, does not necessarily draw after it the right of selection, but merely of exclusion. It enables the prisoner to say who shall not, but not who shall, try him. The defendant in this case exhausted his peremptory challenges in striking names from the list furnished. Among the names remaining upon the list as chosen jurymen was that of one F. When called to the box F. was

found to be absent, and the defense insisted that he be brought in, because he had been chosen and the defendant's challenges had been exhausted. Explaining the bill of exceptions the trial judge certified that the absence of the juror F. was occasioned by sickness, and that he ordered another juror called to complete the panel, who was accepted by the State, whereupon he notified the defendant that, if he was not satisfied, he would be accorded the right of challenge, and another juror would be substituted. The defendant and his counsel refusing to say anything, the panel was completed with the new juror. *Held* that, under the circumstances, the juror F. not having been impaneled and sworn, and no objection having been interposed to him as a juror, it cannot be held that the rights of the defendant were prejudiced by the action of the court. The rule would be otherwise had the juror F. been impaneled and sworn.

2. Same — Theft — Evidence.— A party may, in certain cases, show by his own contemporaneous statements that he was, at the particular time, not acting illegally. Under this rule the trial court erred in refusing to permit the defendant to prove that, prior to his taking possession of, and marking and branding, the alleged stolen animal, he informed the witness D. of the circumstances of his purchase of the animal, and that he asked and followed the advice of D. in taking and branding the animal. While not admissible as *res gestœ*, these declarations tended to show a taking upon a claim of right, and an open assertion of right.

3. Same — Possession of Recently Stolen Property.— When the possession of recently stolen property is relied on as inculpatory of the accused, his explanation thereof is admissible in his behalf, provided it was given on the first occasion for any explanation by him. It is not material that the first occasion did not present itself until three or four weeks after he had parted with the possession. To be admissible, the party must either be in possession of the property, or the explanation must be made when he was arrested for the theft, or when he was charged or informed that he is suspected of the theft. The explanation must have been made when the party was first directly or circumstantially called upon to explain. See the opinion *in extenso* for evidence which, coming within this rule, was erroneously excluded.

Appeal from the District Court of Gonzales. Tried below before the Hon. E. Lewis.

The conviction in this case was for the theft of a beef steer, the property of Sandy Glover, in Gonzales county, Texas, on the 1st day of November, 1881. Two years in the penitentiary was the punishment assessed against the appellant.

Sandy Glover was the first witness for the State. He testified that he lived in Gonzales county, about eight miles from the town of Gonzales. The animal described in the indictment in this case was the property of the witness, and was taken from his possession without his knowledge or consent. The said animal was a dun beef steer, three years old, branded in the witness's brand, which was the letters S G under a half circle, and in his mark, which was

a swallow-fork and underbit in the left and an under half crop in the right ear. When, within a month or two after this animal was stolen, the witness recovered him through John Ollison, he was re-marked and re-branded, and had his tail bobbed off. He had been counter-branded fresh, and the original marks had been changed to a crop off the left and an underslope off the right ear. He had also been branded with the letters G I P, which was the defendant's brand. The witness's brand had been recorded for years. The witness was well acquainted with the defendant, and thought that the defendant must have known his, witness's, brand and mark per-fectly well, as defendant lived within a few miles of the witness. He did not, however, know positively that the defendant knew his brand. The steer alleged to have been stolen by the defendant ran with another of the same age, in the same mark and brand, near the houses of both the witness and the defendant. This animal was taken from the possession of the witness two or three months before the witness went before the grand jury. The witness was unable either to read or write, and could not make a *fac simile* of his brand. He had and exhibited a *fac simile* made by his daughter.

The Gonzales county record of marks and brands was here intro-duced by the State, and the brand of Sandy Glover was shown to have been recorded as S G under a half circle, and his mark as a swallow-fork and underbit in the left and an underslope in the right ear. When recovered, according to Sandy Glover's testimony his original brand had not been disfigured, but only counter-branded.

John Ollison testified, for the State, that about a month before Sandy Glover claimed and recovered the steer involved in this pros-ecution, the defendant turned the animal over to witness to break. When the witness received this steer from the defendant, he had been freshly counter-branded, and his ear marks had been freshly changed. He was also freshly branded in the defendant's brand. Witness drove this steer, in his wagon, to the town of Gonzales, where Sandy Glover saw, claimed and took possession of him. This occurred two or three years prior to this trial and a month or two before the witness went before the grand jury. When the witness told the defendant that Glover had claimed and taken the steer, he, defendant, said that he bought the steer when he went " below." The defendant was not at home when the steer was claimed and taken by Glover, and did not get home for two or three days. Witness lived within a few miles of Sandy Glover, but did not know that he had either a brand or stock. The State closed.

J. N. Dismukes testified, for the defense, that he saw the animal for the theft of which the defendant was being prosecuted. That animal was a dun steer, three years old, branded and counter-branded S G, under a half circle. He had also been recently put in the defendant's brand. When witness saw this animal he was in John Ollison's team in the town of Gonzales. Witness noticed him because he had previously had a conversation with the defendant about this same steer. This conversation occurred just before the defendant took up the said steer. Defendant had then just returned from his pursuit of a horse thief into the lower country. The witness was not permitted to relate this conversation, and this ruling is the subject-matter of the opinion referred to in the second head-note of this report. Witness lived within two miles of Sandy Glover, but had never known that Glover owned either stock or brand.

James Bissett testified, for the defense, that in October or November, three years prior to this trial, he was with the defendant near San Diego in either Duval or Live Oak county. On that occasion he heard the defendant trade with a man named Goodwin for a small beef steer. The defendant described the brand and Goodwin said that it belonged to the Doby boys, which brand and stock he, Goodwin, controlled. The defendant was to pay Goodwin $8 if he, defendant, got the steer. Witness did not remember the brand as described by the defendant at that time. Neither money or bill of sale passed between defendant and Goodwin on the occasion referred to by the witness. He did not know that the beef referred to by defendant when talking to Goodwin was branded as defendant then claimed. He did not know the present whereabouts of Goodwin.

R. P. Baker, testifying for the defense, stated that he once knew a man named Goodwin who lived near Wrightsboro in Gonzales county. He did not remember, if he ever knew, his given name. That man moved from Gonzales county several years prior to this prosecution.

John Mooney and John Botts testified, for the defense, that two or three days after the steer was claimed by Sandy Glover, they had a conversation with the defendant about the animal. The court refused to permit the witness to detail the substance of those conversations. This ruling is the subject-matter involved in the third head-note of this report.

The motion for new trial asserts: "1. The verdict is contrary to law. 2. The verdict is contrary to the evidence. 3. The instructions of the court are contrary to law. 4. The court erred in not having Fisher on the jury. He had been chosen by defendant."

*W. S. Fly,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

White, Presiding Judge. In selecting a jury from the lists furnished him, defendant had in striking from the lists exhausted his ten peremptory challenges. Amongst the names remaining upon the list of jurymen found to be chosen was that of E. F. Fisher. When the jury chosen was called to take their places in the box, it was found that the juror Fisher was not present, and defendant insisted that said juror should be brought in, because his challenges had been exhausted and because Fisher had been chosen. In his explanation to the bill of exceptions the learned judge says it was ascertained that the juror Fisher was absent and sick, and when, upon an order from the court, another juror was called to complete the panel in place of Fisher, and was accepted by the district attorney for the State, the court informed defendant's attorney that if he was not satisfied with such juror he might exercise the right of challenge upon him, and that the court would stand him aside and get another; and defendant and his counsel refusing to say anything, the panel was completed with the new juror.

Under these circumstances, there being no objection to the new juror, we cannot see that defendant's rights have been disregarded or his interests prejudiced. "The right of peremptory challenge is not of itself a right to select, but a right to reject jurors It excludes from the jury those whom the prisoner objects to, until he exhausts his peremptory challenges. The right, therefore, of challenge does not necessarily draw after it the right of selection, but merely of exclusion. It enables the prisoner to say who shall not try him, but not to say who shall be the particular jurors to try him." (*Loggins* v. *The State,* 12 Texas Ct. App., 80; *Turpin* v. *The State,* 2 Crim. Law Magazine, 532; 54 Vt., 112.) It is true that, Fisher's name being left upon the list after all challenges were exhausted, he was in contemplation and by operation of law one of the chosen jurymen, yet he had neither been impaneled nor sworn; and because such was the effect of the law that was no reason why, when he was found to be absent, sick and unable to sit as a juryman, his place should not be supplied by another juror in every respect competent. To hold otherwise would in such cases unnecessarily delay if it did not entirely defeat a trial. Had the juror been impaneled and sworn, the rule would be different. (*Sterling* v. *The State,* 15 Texas Ct. App., 246; *Hill* v. *The State,* 10 Texas Ct. App., 618; *Ellison* v. *The State,* 12 Texas Ct. App., 557.)

We are of opinion that the court erred in refusing to permit defendant to prove that, prior to his taking possession of and marking and branding the animal, he had informed the witness Dismukes of the circumstances concerning the purchase of the same, and that he asked and followed the advice of Dismukes in taking and branding the animal. Whilst these declarations might not come strictly within the rule of *res gestœ*, and not be admissible as such, still they tended to show a taking upon a claim of right and an open assertion of right. "A party may in certain cases show by his contemporaneous statements that he was at the particular time not acting illegally." (Whart. Crim. Evid. (8th ed.), § 692.)

Again: the defendant offered to prove by the witnesses Mooney and Botts that, two days after Glover had claimed and gotten the animal from Ollison, to whom defendant had loaned him to work, he, defendant, stated to the witnesses that he had bought the animal from one Goodwin, and took it believing he had a fair and honest claim to it. On objection by the prosecution, the court refused to allow the defendant to introduce this evidence. Defendant, at the time he made this statement, was for the first time apprised of the fact that Glover had set up a claim to and had taken the animal from Ollison. We are of opinion he was entitled to the evidence. It was an explanation of his possession of the animal when the fact that his right of possession was questioned and controverted was for the first time made known and brought home to him.

When the possession of recently stolen property is relied on as inculpatory of the accused, his explanation thereof is admissible in his behalf provided it was given on the first occasion for any explanation by him. It is not material even that the first occasion did not present itself until three or four weeks after he had parted with the possession. (*Anderson* v. *The State*, 11 Texas Ct. App., 576; *Lewis* v. *The State, ante*, p. 140.)

But, as was said in *Taylor* v. *The State*, 15 Texas Ct. App., 356: "To be admissible, the party must be in possession of the property, or the explanation must be made when arrested for the theft, or when charged or informed that he is suspected of the theft. And another rule must be borne in mind, which is that the explanation must be made when the party is first directly or circumstantially called upon to explain." (See, also, *Castellow* v. *The State*, 15 Texas Ct. App., 551.) The facts shown, in our opinion, bring this case within the rule.

Other errors are complained of, but, being of a character not

likely to arise on a second trial of this case, we deem it unnecessary to discuss them. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 15, 1884.]